[No. S132814. July 2, 2007.]

THE OAKLAND RAIDERS, Plaintiff, Cross-defendant and Appellant, v. NATIONAL FOOTBALL LEAGUE, Defendant, Cross-complainant and Appellant;
PAUL TAGLIABUE et al., Defendants and Respondents.

## COUNSEL

Howard Rice Nemerovski Canady Falk & Rabkin, Jerome B. Falk, Jr.; Kaye Scholer, Larry R. Feldman, Robert M. Turner, Paul Gelb; Arnold & Porter, John J. Quinn, Laurence J. Hutt; and Jeffrey E. Birren for Plaintiff, Cross-defendant and Appellant.

Stephan, Oringher, Richman, Theodora & Miller, Harry W. R. Chamberlain II, Robert M. Dato and Brian P. Barrow for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

Covington & Burling, Gregg H. Levy; Greines, Martin, Stein & Richland, Irving H. Greines; Ruby & Schofield, Allen J. Ruby; Skadden, Arps, Slate, Meagher & Flom and Douglas B. Adler for Defendant, Cross-complainant and Appellant and for Defendants and Respondents.

Reed Smith, Paul D. Fogel and Dennis Peter Maio for Alameda Contra Costa Trial Lawyers Association, Hinton, Alfert & Sumner and Abbey, Weitzenberg, Warren & Emery as Amici Curiae on behalf of Defendant, Cross-complainant and Appellant.

Munger, Toller & Olson and Ronald L. Olson as Amici Curiae on behalf of Defendant, Cross-complainant and Appellant.

## OPINION

**KENNARD, J.**—Code of Civil Procedure section 657 (hereafter section 657) requires that an order granting a new trial specify not only the ground for the order but also "the court's reason or reasons for granting the new trial upon each ground stated." Here, the trial court granted plaintiff The Oakland Raiders' motion for a new trial on the ground of jury misconduct, but the court failed to set out the required specification of reasons for granting a new trial based on jury misconduct.

■ Although ordinarily an order granting a new trial is reviewed only for abuse of discretion, the Court of Appeal held that an order lacking an adequate specification of reasons is subject to independent review. Under that standard of review—one that gives no deference to the trial court's ruling—the Court of Appeal overturned the order granting a new trial and consequently affirmed the verdict and judgment against the Raiders. We agree with the analysis and conclusion of the Court of Appeal, and therefore we affirm the judgment of that court.

## I. Factual and Procedural Background

### A. *Facts Leading to the Raiders' Move from Los Angeles*

The Oakland Raiders is a professional football team owned by Al Davis, with a membership in the National Football League (NFL), which is an unincorporated association governed by its own constitution and bylaws. After the Raiders relocated to Los Angeles from Oakland in 1982, they played their home games at the Los Angeles Memorial Coliseum until 1995. Unlike newer stadiums, the Coliseum's facilities did not permit the team to derive revenues from items such as luxury suites, club seats, naming rights, or other sponsorships.

Throughout the end of 1994 and the first half of 1995, the Raiders negotiated with individuals representing Hollywood Park, a racetrack, for the construction of a new, state-of-the-art stadium in Inglewood in Southern California. In March 1995, the parties reached an agreement that required the Raiders to secure from the NFL a contribution of $20 million and a commitment that at least two Super Bowl games would be played in the new stadium at Hollywood Park between 2000 and 2004. The NFL, however, offered only to schedule one Super Bowl at Hollywood Park during the period in question. The NFL proposed to invest some money in the project, but less than the Raiders had requested. It offered to provide additional assistance on the condition that a second NFL team be permitted to play at the stadium for several years.

In May 1995, the NFL adopted "Resolution FC-7," which, among other things, awarded two Super Bowls to the planned Hollywood Park stadium conditioned on two NFL teams playing there, and created a committee to negotiate with both the Raiders and Hollywood Park concerning a second NFL team. The new committee developed terms to permit a second NFL team to play in the Los Angeles region, but those terms were inconsistent with the Raiders' goals, and the Raiders perceived them as favoring the second team. As a result, the Raiders entered into an agreement with the City of Oakland in June 1995 to move to the renovated Oakland Coliseum. The agreement included an "up-front" $64 million payment to the Raiders and immediately enhanced revenue streams. Al Davis, the Raiders' owner, testified that Oakland officials assured him that personal seat licenses and game tickets would sell out.

### B. *Pleadings and Trial*

In March 1999, the Raiders brought an action for damages against the NFL and other defendants.[1] On March 13, 2001, jury trial commenced on five of the six causes of action that had survived motions for summary adjudication. The first through third causes of action involved the Raiders' claim that, by moving to Oakland, they left the NFL with an "opportunity" to put another team in Los Angeles and that the NFL's constitution and bylaws implicitly required that the Raiders be compensated for providing the NFL with that opportunity. The fifth and sixth causes of action addressed the NFL's failure to offer the Raiders more support for the development of the Hollywood Park stadium. (The fourth cause of action, for declaratory relief, was tried later without a jury.)

The jury deliberated for 15 days. (It began deliberations anew on the fifth day after one juror was excused because of a scheduling conflict.) It returned a nine-to-three verdict in favor of the NFL. Later, after a bench trial, the court entered its statement of decision on the remaining cause of action, denying the Raiders' request for declaratory relief.

### C. *Posttrial Motions*

On July 26, 2002, the trial court entered judgment on all matters tried before the jury and the court. That same day, the Raiders moved for a new trial on the ground, among others, of juror misconduct. The motion asserted that Juror Joseph A. was biased against the Raiders and concealed that bias during voir dire. It further asserted that another juror, Attorney Linda H., dominated jury deliberations, infected the deliberations with her own view of the law, and engaged in private deliberations with another juror. Finally, the Raiders suggested that a third juror, Lagrimas P., had difficulty understanding English. On appeal, however, the Raiders abandoned their claim that Lagrimas P.'s language difficulty was an independent ground for granting a new trial.

To demonstrate the misconduct of Jurors Joseph A. and Linda H., the Raiders submitted declarations from five jurors. According to those declarations, Juror Joseph A. stated several times during deliberations that he hated the Raiders and their owner, Al Davis, and that he would never find for the Raiders or award them any money. Juror Alice I. declared: "Joseph [A.] stated to the group that he hated the Raiders and Raiders' owner Al Davis. He also said to us that the Raiders were always starting lawsuits with the NFL,

---

[1] This appeal does not involve the other defendants or the NFL's cross-complaint against the Raiders.

and that he would never award the Raiders any money or find for the Raiders in this case. [¶] I confronted [Joseph A.], along with several other jurors, saying that it was improper for him to make such a statement and to act that way. I also told him that he had filled out a questionnaire, and he had a duty to express his hostility in the questionnaire. [Joseph A.] responded to me 'this is America'; that he had a right to express how he felt; that the questionnaire only asked him what his favorite team was, which he said was the New York Jets or Giants, and that the questionnaire did not ask which team he disliked. [¶] Jurors [Wayman J.] and [William S.] both told [Joseph A.], in the presence of other jurors, that this act of concealing his bias could cause a mistrial. [¶] [Joseph A. did not] attempt to explain his dislike for the Raiders in terms of any evidence he had heard during the trial; rather, his references to other lawsuits between the Raiders and the NFL and his other comments to the jury made clear to me that his bias against the Raiders existed prior to this trial."

Jurors William S. and Alfredo B. submitted declarations that supported Juror Alice I.'s declaration in all particulars. Jurors Angelo C. and Richard L. also mentioned Joseph A.'s hostility to the Raiders and Al Davis. Richard L. said: "[Joseph A.] did not hide the fact that he was biased against the Raiders. The deliberations were held with these statements hanging over everyone."

The Raiders also charged jury misconduct by Juror Linda H. The declaration by Juror William S. stated that Linda H. "told the other jurors that the Raiders' lawyer did not want her on the jury, and that she would make them pay." The declaration of Juror Angelo C. stated that Juror Linda H., a lawyer, "exercised an unofficial leadership position," dominated the deliberations, and instructed the jurors on the law. She "told the jury that if they voted one way on one of the claims, they had to vote the same way on another claim, because 'that was the law.' " She also wrote out statements of the law and taped them to the jury room walls; her statements were not quotations from the jury instructions "but were her own words of what she claimed the law was." She also told the other jurors that Resolution FC-7 could not be a contract and that there could be no fiduciary relationship between the NFL and the Raiders as a matter of law.

The NFL submitted seven juror declarations in opposition to the Raiders' motion for a new trial. Juror Joseph A. stated: "At no time did I have or conceal any hostility, bias, or ill will toward the Raiders or Mr. Davis. . . . After we had been deliberating for many days, at a moment when everyone seemed to be tense, I said jokingly that I hated the Raiders 'because I had lost my bet.' I mentioned that years earlier, I had gone to Las Vegas and placed a small, legal bet on the Raiders in a playoff game, which they lost. The part about 'hating the Raiders' was an obvious joke, no one confronted me about

it, and I still cannot believe that anyone took my comment seriously. I made my comment as a joke to relieve the tension in the room."

According to Jurors William S. and Alice I., Wayman J., the first jury foreman, was among the jurors who confronted Joseph A. But Wayman J.'s declaration in support of the NFL stated: "I did not . . . hear any words by any juror that reflected a preexisting bias or prejudice for or against any party." He did not recall any incident in which he confronted Joseph A. Other jurors stated that Joseph A. did not give them any reason to believe that he harbored a preexisting bias against the Raiders.

Juror Linda H. denied any bias against the Raiders, denied dominating the deliberations, stated that she told her fellow jurors to follow the court's instructions and did not tell the jury what the law was, and explained that she wrote out the jury instructions verbatim, except for an inadvertent error when she wrote "fiduciary duty" instead of "fiduciary relationship."

In response to two jurors' assertions that Juror Linda H. stated what evidence could and could not be considered, Linda H. declared that she neither used her "position as an attorney to make pronouncements about the evidence" nor "opine[d] whether certain facts were or were not in evidence 'as a matter of law.' " She also denied the assertion of three jurors that she told the jury that Resolution FC-7 could not be a contract and that there could be no fiduciary relationship between the NFL and the Raiders as a matter of law. Other jurors recalled that Linda H. said the jury should get written clarification from the trial court concerning this issue and that, as a result, the jury sent a written question to the court.

The Raiders filed their reply, together with six reply declarations, on September 5, 2002. The NFL moved to strike the declarations on the ground they were untimely filed. The trial court did not rule on the NFL's motion to strike.

On September 11, 2002, the trial court heard argument on the Raiders' motions for a new trial and for judgment notwithstanding the verdict, and it took the matters under submission. On September 23, it issued a minute order granting the motion for a new trial and denying the motion for judgment notwithstanding the verdict. In ruling on the motion for a new trial, the trial court stated only: "The motion for new trial is granted. The Court finds that the objectively ascertainable acts of juror misconduct were prejudicial to the Oakland Raiders' right to a fair trial." The court did not specify any reasons for its conclusion. With respect to the other grounds raised by the motion, the court stated: "While some of the objections in the motion for new trial premised on erroneous and/or prejudicial jury instructions raise serious

questions concerning their use, and hav[e] given the Court some pause, having granted the motion for new trial on other grounds, we have not reached these issues."

The NFL appealed from the order granting a new trial, and the Raiders appealed from the judgment. The Court of Appeal affirmed the trial court's orders granting the NFL's motion for summary judgment on the issue of Hollywood Park's fiduciary duty and denying the Raiders' request for declaratory relief. It held, however, that the trial court's order granting the Raiders a new trial failed to comply with section 657 because it lacked a statement of reasons for granting a new trial on the ground of juror misconduct. It concluded that, in view of the sharp conflict in the juror declarations, the Raiders had failed to meet their burden of showing that the trial court should have granted the motion on the ground of juror misconduct. The Court of Appeal further rejected the Raiders' contention that the new trial order could be sustained on the ground of instructional error. It reversed the trial court's order granting the Raiders a new trial, and it directed the trial court to enter judgment in accordance with the jury verdict in favor of the NFL.

We granted the Raiders' petition for review, which raised only the issue of the appropriate standard of review on appeal when an order granting a new trial on the ground of jury misconduct lacks the statutorily required statement of reasons for granting a new trial on that ground.

## II. ANALYSIS

### A. *Section 657*

■ The authority of a trial court in this state to grant a new trial is established and circumscribed by statute. (See *Diamond v. Superior Court* (1922) 189 Cal. 732, 736 [210 P. 36].) Section 657 sets out seven grounds for such a motion: (1) "Irregularity in the proceedings"; (2) "Misconduct of the jury"; (3) "Accident or surprise"; (4) "Newly discovered evidence"; (5) "Excessive or inadequate damages"; (6) "Insufficiency of the evidence"; and (7) "Error in law."

Before 1965, section 657 only required the trial court to specify whether it was granting the new trial motion on the ground of insufficiency of the evidence. (See Stats. 1919, ch. 100, § 1, p. 141; Stats. 1939, ch. 713, § 1, pp. 2234–2235.) Amendments enacted in 1965 (modified slightly in 1967) require the trial court to state not only the ground upon which the motion is granted but also the reasons for granting the motion on that ground. Section 657 now provides: "When a new trial is granted, on all or part of the issues,

the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated. [¶] . . . [¶] . . . [I]f the motion is granted [the order] must state the ground or grounds relied upon by the court, and may contain the specification of reasons. If an order granting such motion does not contain such specification of reasons, the court must, within 10 days after filing such order, prepare, sign and file such specification of reasons in writing with the clerk. The court shall not direct the attorney for a party to prepare either or both said order and said specification of reasons." (§ 657, as amended by Stats. 1965, ch. 1749, § 1, pp. 3922–3923 and Stats. 1967, ch. 72, § 1, pp. 970–971.)

■ As this court explained in *Mercer v. Perez* (1968) 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315] (*Mercer*), the first case to construe the amended statute, "it is apparent that in the context of this statute the words 'ground' and 'reason' have different meanings." (*Id.* at p. 112.) The word "ground" refers to any of the seven grounds listed in section 657. (*Mercer, supra,* at p. 111.) A statement of grounds that reasonably approximates the statutory language is sufficient. (*Ibid.*; see *Treber v. Superior Court* (1968) 68 Cal.2d 128, 131 [65 Cal.Rptr. 330, 436 P.2d 330] (*Treber*).) The statement of "reasons," on the other hand, should be specific enough to facilitate appellate review and avoid any need for the appellate court to rely on inference or speculation. (See *Scala v. Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 370 [90 Cal.Rptr. 592, 475 P.2d 864] (*Scala*); *Mercer, supra,* 68 Cal.2d at pp. 112–115; *Meiner v. Ford Motor Co.* (1971) 17 Cal.App.3d 127, 136 [94 Cal.Rptr. 702].)

■ Finally, section 657 provides: "On appeal from an order granting a new trial the order shall be affirmed if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons . . . ." There are two exceptions: Orders may not be affirmed on the ground of insufficiency of the evidence or on the ground of excessive or inadequate damages unless that ground is specified in the order. Neither applies here.

■ California courts have consistently required strict compliance with section 657. Its requirement that the statement of reasons be filed no later than 10 days after the order granting a new trial is jurisdictional, and a statement of reasons filed more than 10 days after the order is ineffective. (*La Manna v. Stewart* (1975) 13 Cal.3d 413, 418 [118 Cal.Rptr. 761, 530 P.2d 1073]; *Mercer, supra,* 68 Cal.2d at p. 121; *Hand Electronics, Inc. v. Snowline Joint Unified School Dist.* (1994) 21 Cal.App.4th 862, 867–868 [26 Cal.Rptr.2d 446] (*Hand Electronics*).) Substantial compliance with the statute is not sufficient. (*La Manna v. Stewart, supra,* at pp. 419–423 [oral statement of reasons set down in reporter's transcript does not comply with statute]; see

*Malkasian v. Irwin* (1964) 61 Cal.2d 738, 744–745 [40 Cal.Rptr. 78, 394 P.2d 822] (*Malkasian*) [trial court orally stated the ground for granting a new trial, but the clerk mistakenly failed to specify the ground in the written order]; *Stewart v. Truck Ins. Exchange* (1993) 17 Cal.App.4th 468, 484–485 [21 Cal.Rptr.2d 338]; *Steinhart v. South Coast Area Transit* (1986) 183 Cal.App.3d 770, 773–774 [228 Cal.Rptr. 283] [minute order referring to oral statement insufficient].) The statement of reasons must refer to evidence, not ultimate facts. (*Scala, supra,* 3 Cal.3d at pp. 366–367.) And the appellate court cannot remand the case to permit the trial court to correct an insufficient statement of reasons. (*Mercer, supra,* at pp. 122–123; see *Fry v. Young* (1968) 267 Cal.App.2d 340, 347 [73 Cal.Rptr. 62].)

■ The courts' strict interpretation of section 657 has been criticized as creating "a 'procedural minefield' for trial judges who issue new trial orders." (*Thompson v. Friendly Hills Regional Medical Center* (1999) 71 Cal.App.4th 544, 550, fn. 5 [84 Cal.Rptr.2d 51] (*Thompson*), quoting *Sanchez-Corea v. Bank of America* (1985) 38 Cal.3d 892, 911 [215 Cal.Rptr. 679, 701 P.2d 826] (dis. opn. of Kaus, J.) (*Sanchez-Corea*).) This court has also noted the unfairness to the successful moving party when the trial court's failure to file an adequate statement of reasons renders the order defective.[2] (*Sanchez-Corea, supra,* at p. 905, fn. 5.) But to this criticism the response has been: " 'The power of the legislature [in] specifying procedural steps for new trials is exclusive and unlimited. [Citations.] The wisdom of or necessity for certain requirements are matters for legislative and not judicial consideration . . . .' " (*Mercer, supra,* 68 Cal.2d at p. 117; see *La Manna v. Stewart, supra,* 13 Cal.3d at p. 422, fn. 8.)

### B. *Judicial Review of Orders Granting a New Trial*

Although many issues were raised in the Court of Appeal, the Raiders' petition for review in this court raises only one: whether the trial court's order granting the Raiders' motion for a new trial should be sustained on the ground of jury misconduct. The parties here do not contest (1) that the only possibly viable ground for a new trial was jury misconduct; (2) that the trial court adequately specified that ground as a basis for granting the motion; and (3) that the trial court did not state its reasons for granting a new trial on that ground. Thus, *we address a single, narrow issue*: the standard of review— whether abuse of discretion or independent review—when, as here, a trial

---

[2] The Court of Appeal in *LaBorne v. Mulvany* (1974) 43 Cal.App.3d 905, 917 [119 Cal.Rptr. 596], suggested that the moving party could seek a writ of mandate to compel the trial court to state its reasons for granting a new trial order. But as pointed out by the Court of Appeal in *Zhadan v. Downtown L. A. Motors* (1976) 66 Cal.App.3d 481, 494 [136 Cal.Rptr. 132], the moving party does not know that the trial court will not file a timely statement of reasons until the statutory 10-day period for filing the statement has expired, and once that period has expired the trial court has no jurisdiction to file the statement.

court grants a new trial on the ground of jury misconduct and properly specifies the ground for granting the motion but does not provide a statement of the reasons for granting the new trial on that ground.

■    Section 657 provides for the situation in which an order granting a new trial is not supported by a specification of reasons. As noted earlier, section 657 states: "On appeal from an order granting a new trial the order shall be affirmed if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons . . . ." Consequently, when as here an order granting a new trial states the ground as jury misconduct, but the trial court fails to specify the reasons for that conclusion, the order is not void. (See *Sanchez-Corea, supra,* 38 Cal.3d at p. 901; *Hand Electronics, supra,* 21 Cal.App.4th at p. 868.) The order may still be sustained if a new trial should have been granted upon any ground set out in section 657 except the grounds of insufficiency of the evidence or inadequate or excessive damages. (*Sanchez-Corea, supra,* at p. 905.)

■    When the trial court provides a statement of reasons as required by section 657, the appropriate standard of judicial review is one that defers to the trial court's resolution of conflicts in the evidence and inquires only whether the court's decision was an abuse of discretion. (See, e.g., *Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 409, 412 [93 Cal.Rptr.2d 60, 993 P.2d 388]; *In re Marriage of Beilock* (1978) 81 Cal.App.3d 713, 728 [146 Cal.Rptr. 675].) But when there is no statement of reasons, an appellate court's use of an abuse of discretion standard of review would subvert the purposes that this court has identified as underlying section 657's statement of reasons requirement.

In *Mercer, supra,* 68 Cal.2d 104, we described those purposes as twofold. One is "to promote judicial deliberation before judicial action." (*Id.* at p. 113.) The statute serves that purpose by requiring a statement of reasons drafted by the court, not by the prevailing party. (*Id.* at pp. 113, 115.) The other purpose is "to make the right to appeal from the order more meaningful." (*Id.* at p. 113; see *Stewart v. Truck Ins. Exchange, supra,* 17 Cal.App.4th at p. 484; *Bigboy v. County of San Diego* (1984) 154 Cal.App.3d 397, 404 [201 Cal.Rptr. 226].) We explained in *Mercer* that before the Legislature's 1965 amendments to section 657, "[i]t often occurred . . . that the notice of motion was predicated on all or most of the statutory grounds, and the subsequent order specified neither the ground or grounds found applicable nor the reasons therefor; in that event, the appellant was left in the dark as to which aspect of the trial to defend, and quite understandably struck out blindly in several directions at once." (*Mercer, supra,* at p. 113.) *Mercer* went on to state: "The new statute seeks to correct this inefficient and often frustrating procedure. . . . [¶] . . . [T]he appellant need only address himself

to those asserted deficiencies in the proof which are specified as reasons for the order . . . ." (*Id.* at p. 115.)

Our decisions have frequently overturned orders granting a new trial based on a conclusion that to do otherwise would frustrate the purposes of section 657's requirements.

■ In *Scala, supra,* 3 Cal.3d 359, for example, we held that a statement of reasons in the form of a finding of ultimate facts rather than evidentiary facts "frustrates rather than promotes the legislative purpose of facilitating meaningful appellate review of the order granting a new trial, and hence is inadequate to comply with the mandate of Code of Civil Procedure section 657." (*Id.* at p. 370, fn. omitted.) We therefore reversed the order granting a new trial, observing: "The order was made almost a full year after our ruling in *Mercer,* which prescribed in as much detail as feasible the duty of a trial court to comply with section 657. Today's decision is no new departure in the law, but simply reiterates the *Mercer* construction of the statutory intent and the manner of translating that intent into action." (*Scala, supra,* at p. 371.)

In *La Manna v. Stewart, supra,* 13 Cal.3d 413, the trial court stated its reasons for granting a new trial orally, specifying the ground of insufficiency of the evidence. (*Id.* at p. 417, fn. 1.) It later filed a written statement of reasons after the statutory 10-day period had run. (*Id.* at p. 417.) Rejecting the argument that the trial court had substantially complied with section 657, we reversed the order granting the new trial because the statement of reasons did not conform to the specific requirements of section 657. (*La Manna v. Stewart, supra,* at pp. 420–423.)

*Miller v. Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689 [106 Cal.Rptr. 1, 505 P.2d 193] was a wrongful death and personal injury suit in which the plaintiffs alleged that the flood control district had negligently maintained a dam-like flood control basin, thereby creating a dangerous condition of public property. (*Id.* at p. 693.) During a rainstorm, water and debris flowed over the basin and demolished the plaintiffs' house, causing the death of one resident and injuries to another. (*Ibid.*) After the jury returned a verdict for the plaintiffs, the trial court granted the flood control district's motion for a new trial on the ground of insufficiency of the evidence. (*Id.* at p. 696.) The court's statement of reasons stated only that the defendant completely and adequately discharged its obligations, without any further explanation. (*Ibid.*) We reversed the order granting a new trial, holding that the trial court's statement of reasons was inadequate because we could not determine whether the trial court found that a hazardous condition never existed or that it had been remedied before the date of the plaintiffs' injuries.

"[T]he amendments to section 657," we said, "were intended to preclude just this type of guesswork." (*Id.* at p. 698, fn. 8; see *La Manna v. Stewart, supra,* 13 Cal.3d at p. 420.)

In *Sanchez-Corea, supra,* 38 Cal.3d 892, the trial court's order specifying insufficiency of the evidence as the ground for granting a new trial was not filed until after the trial court had lost jurisdiction. (*Id.* at pp. 898, 903.) Consequently, under the terms of section 657, the new trial order could not be sustained on the grounds of insufficiency of the evidence, excessive damages, or inadequate damages. (*Sanchez-Corea, supra,* at p. 905.) We observed, however, that if "the motion states any *other* ground for a new trial, an order granting the motion will be affirmed if any such other ground legally requires a new trial." (*Ibid.,* original italics.)

The moving party in *Sanchez-Corea* argued that the order granting a new trial should be affirmed on the ground that the verdict was "against law" (§ 657). In this context, a verdict is "against law" only if it was unsupported by substantial evidence. (*Sanchez-Corea, supra,* 38 Cal.3d at p. 906.) We therefore reviewed the record in the case, but in doing so, we did not defer to the decision of the trial court granting the new trial motion. To the contrary, we examined the record in the light most favorable to the jury verdict, and we concluded that substantial evidence supported the verdict. (*Id.* at p. 907.)

Finally, we note the decision of the Court of Appeal in *Thompson, supra,* 71 Cal.App.4th 544. There, the plaintiff sued for breach of an employment contract. (*Id.* at p. 547.) The jury returned a verdict for the plaintiff, but the trial court granted the defendant's motion for a new trial on the ground of excessive damages. (*Id.* at pp. 547–548.) The trial court adopted a statement of reasons that the defendant had prepared—a clear violation of section 657, which requires the court itself to prepare the statement of reasons. (*Thompson, supra,* at pp. 548–549.) *Thompson* concluded that in the absence of a statement of reasons prepared by the trial court, the appellate court should "independently review all the grounds advanced for the new trial motion" to determine if a new trial was required on any stated ground. (*Id.* at p. 550.) Applying an independent standard of review, and finding no stated ground that required a new trial, the Court of Appeal in *Thompson* reversed the new trial order. (*Id.* at pp. 550–552.)

The Raiders urge us not to apply a standard of independent review, contending that doing so would be inconsistent with two older decisions of this court, *Malkasian, supra,* 61 Cal.2d 738, and *Treber, supra,* 68 Cal.2d 128. As we will explain, those decisions suggest that an appellate court should defer to the trial court in determining whether an act of misconduct was prejudicial. But before a court can consider whether an act of misconduct

was prejudicial, it must first determine whether the act occurred, and on that question *Malkasian* and *Treber* do not require deference to the trial court.

At the time of the *Malkasian* trial, section 657 did not require a statement of reasons, but it did require the trial court to state whether its order was based on the ground of insufficiency of the evidence. (See *ante*, at p. 633.) The motion for a new trial in *Malkasian* was based on several grounds. The trial court said it was granting the motion on the ground of insufficiency of the evidence, but the written order prepared by the court clerk did not specify the grounds for granting a new trial. (*Malkasian*, *supra*, 61 Cal.2d at pp. 743–744.) This court in *Malkasian* held that the language of section 657 prevented the trial court from correcting that mistake by an order made after the expiration of the 10-day period. (*Malkasian*, *supra*, at pp. 744–745.) We therefore examined the record to determine whether the order granting new trial was supported on any other ground (*id.* at p. 745), and we concluded that the order could be sustained on the ground of improper argument to the jury by the defendant's counsel (*id.* at pp. 745–749).

In *Malkasian*, the analysis proceeded in two steps. We first determined that the defendant's attorney had engaged in misconduct during argument to the jury, and then that the attorney's misconduct was sufficiently prejudicial to require a new trial. The first step, determining whether misconduct had occurred, did not require the resolution of conflicting evidence because the undisputed record showed that the attorney's argument to the jury had relied on purported facts that were unsupported by the evidence presented during the trial. (*Malkasian*, *supra*, 61 Cal.2d at pp. 746–747.) We did not state what standard of review we used to decide whether the argument was erroneous, but explicitly applied an abuse of discretion standard to determine whether the erroneous argument was prejudicial.[3]

*Treber*, *supra*, 68 Cal.2d 128, the other case cited by the Raiders, was a companion case to *Mercer*, *supra*, 68 Cal.2d 104. *Treber* involved a petition for a writ of mandate to compel the trial court to vacate an order granting a new trial that lacked an adequate specification of reasons. (*Treber*, *supra*, at p. 130.) We held mandate unavailable because the petitioner had an adequate appellate remedy. (*Id.* at p. 136.) We also explained that in reviewing an order granting a new trial, the appellate court will independently review an issue of

---

[3] After determining that the defense attorney in *Malkasian* had misrepresented the evidence in argument to the jury, this court stated that the issue was whether the attorney's argument "was sufficiently misleading so that the trial court that had seen and heard the witnesses could find that it was improper" and that "[i]f that point is . . . reasonably debatable, the discretion of the trial court cannot be disturbed." (*Malkasian*, *supra*, 61 Cal.2d at p. 748.) This language does not refer to determining what the attorney said to the jury or what evidence had been presented during the trial (all of which was undisputed) but instead to whether the attorney's misrepresentations to the jury were so prejudicial that a new trial was required.

law (*id.* at p. 132; see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493]) but will defer to the trial court's judgment on the issue of prejudice because that issue involves an assessment based on the entire record of the proceedings before the trial court, and it is thus more suitably made by the trial court (*Treber, supra,* at p. 132; see *People v. Ault* (2004) 33 Cal.4th 1250, 1267–1268 [17 Cal.Rptr.3d 302, 95 P.3d 523]; *Hand Electronics, supra,* 21 Cal.App.4th at p. 871).

■ The Court of Appeal here concluded that the absence of a statement of reasons calls for independent review of the trial court's order granting a motion for a new trial. We agree.[4] The reviewing court should not, in a situation such as that presented here, defer to the trial court's resolution of conflicts in the evidence, or draw all inferences favorably to the trial court's decision, because in the absence of a statement of reasons, the record does not show whether the trial court resolved those conflicts or drew those inferences.

Our decision is a narrow one. We address only the situation in which there is conflicting evidence on the issue of juror misconduct, not the question whether misconduct, shown by the record, is prejudicial. We do not address the situation in which apparently conflicting declarations can be reconciled, so that on close examination it is determined that the crucial allegations of misconduct are not in dispute. (See, e.g., *McDonald v. Southern Pacific Transportation Co.* (1999) 71 Cal.App.4th 256, 263–265 [83 Cal.Rptr.2d 734]; *Young v. Brunicardi* (1986) 187 Cal.App.3d 1344, 1351 [232 Cal.Rptr. 588]; *Clemens v. Regents of University of California* (1971) 20 Cal.App.3d 356, 365 [97 Cal.Rptr. 589].)

C. *Independent Review of the Juror Declarations*

■ Because ordinarily "a party who seeks a court's action in his favor bears the burden of persuasion thereon" (*Aguilar v. Atlantic Richfield Co.,*

---

[4] In this context, we use the term "independent review" to mean a form of review that does not defer to the trial court's inferred resolution of conflicts in the evidence. We recognize that in some other cases, "independent review" signifies that the appellate court will resolve those conflicts itself. In habeas corpus cases, for example, we resolve issues of credibility ourselves, but we give great weight to the findings of our appointed referee when they are supported by substantial evidence. (See, e.g., *In re Hamilton* (1999) 20 Cal.4th 273, 296 [84 Cal.Rptr.2d 403, 975 P.2d 600].) And in cases raising First Amendment issues, an appellate court must undertake an independent review of the evidence to determine " 'whether a given course of conduct falls on the near or far side of the line of constitutional protection.' " (*In re George T.* (2004) 33 Cal.4th 620, 632 [16 Cal.Rptr.3d 61, 93 P.3d 1007], quoting *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.* (1995) 515 U.S. 557, 567 [132 L.Ed.2d 487, 115 S.Ct. 2338].) Here, however, we do not independently resolve conflicts in the evidence; instead, we conclude that the existence of such conflict demonstrates that the Raiders have not shown that a new trial was warranted.

*supra*, 25 Cal.4th at p. 850), if here the NFL were appealing from a new trial order supported by the statutorily required statement of reasons, it would bear the burden of persuading the appellate court that the order should be overturned. (See *Yarrow v. State of California* (1960) 53 Cal.2d 427, 434 [2 Cal.Rptr. 137, 348 P.2d 687]; see also *Aguilar v. Atlantic Richfield Co.*, *supra*, at p. 850, fn. 11 [explaining the difference between a burden of persuasion and a burden of proof].) But when a party such as the Raiders asks a reviewing court to sustain a *defective* trial court order, relying upon a ground stated in the new trial motion but not supported by a statement of reasons, the situation is reversed. Now "the burden is on the movant to advance any grounds stated in the motion upon which the order should be affirmed, and a record and argument to support it" (*Sanchez-Corea*, *supra*, 38 Cal.3d at p. 906) and to persuade the reviewing court that the trial court should have granted the motion for a new trial. Thus, the effect of the trial court's failure to file a statement of reasons in support of the order granting a new trial is to shift the burden of persuasion to the party seeking to uphold the trial court's order.

The Raiders have not met this burden. We have described in detail (see *ante*, at pp. 630–632) the juror declarations filed in support of and in opposition to the Raiders' new trial motion. In summary, the Raiders alleged that Juror Joseph A. was biased and that Juror Linda H. committed misconduct. Because the trial court did not file a statement of reasons underlying its conclusion of jury misconduct, we do not know whether the trial court's ruling was based on the bias of Joseph A., the misconduct of Linda H., or both.

Juror Joseph A., in his declaration submitted by the NFL in opposition to the Raiders' motion for a new trial, acknowledged telling the other jurors that he hated the Raiders, but he claimed that he said so in jest. Some jurors who filed declarations in favor of the NFL agreed that Joseph A. was only joking; but those filing declarations in favor of the Raiders said they took Joseph A.'s comments seriously. Other jurors did not hear or remember Joseph A.'s comments. Juror Alice I. said that she and two other jurors (Wayman J. and William S.) confronted Juror Joseph A. and warned him that by concealing his bias he could cause a mistrial. Juror William S. supported Alice I.'s statement, but both Joseph A. and Wayman J. denied that any confrontation occurred.

Juror Linda H. acknowledged in her declaration submitted by the NFL in opposition to the Raiders' motions for a new trial that she wrote statements of law and taped them to the walls of the jury room. Linda H. and three other jurors said the statements merely copied the trial court's instructions; three other jurors said the statements departed from the court's instructions. The

papers taped to the jury room walls are not part of the record, and no declarant could say specifically how Linda H.'s written statements of law differed from the court's instructions to the jury.

According to the declarations of three jurors, Linda H. told them Resolution FC-7 (see *ante*, at p. 629) could not be a contract, but the declarations of two other jurors said Linda H. only suggested that the jurors should get clarification from the trial court on that issue, which they did.

In sum, the testimonial evidence submitted by the parties in the form of juror declarations is sharply conflicting on every material issue, and the Raiders submitted no other evidence to support their motion for a new trial. Consequently, upon independent review of the record, we conclude that the Raiders have failed to discharge their burden to persuade us of jury misconduct warranting the grant of a new trial.

#### DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

**BAXTER, J.,** Concurring.—I join in the judgment affirming the Court of Appeal and concur generally in the majority's analysis under the particular circumstances of this case. Had the trial court supported its order granting a new trial with an adequate statement of reasons, we would have been bound to defer to the trial court's resolution of the factual conflicts in the affidavits concerning the existence of juror misconduct. (*Weathers v. Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 108–109 [95 Cal.Rptr. 516, 485 P.2d 1132].) In that event, it appears that the Oakland Raiders would have been entitled to the benefit of the new trial order, inasmuch as the National Football League has not contended here that the new trial order was invalid under an abuse-of-discretion standard. The Raiders snatch defeat from the jaws of victory in this proceeding only because the trial court failed to comply with its "mandatory" duty to specify the reasons for its order granting a new trial (*Sanchez-Corea v. Bank of America* (1985) 38 Cal.3d 892, 896 [215 Cal.Rptr. 679, 701 P.2d 826]) and because the Raiders, on this record, failed to discharge their burden of persuading the reviewing court that a new trial should have been granted.

As the majority emphasizes, however, our decision to review this new trial order under a nondeferential standard is "a narrow one" (maj. opn., *ante*, at p. 640) in that the trial court's failure to file a statement of reasons made it

impossible for us to determine "whether the trial court's ruling was based on the bias of Joseph A., the misconduct of Linda H., or both." (*Id.* at p. 641.) Different situations may invoke a different standard of review, in accordance with our prior observation that "any determination underlying any [new trial] order is scrutinized *under the test appropriate to such determination.*" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859 [107 Cal.Rptr.2d 841, 24 P.3d 493], italics added.) Our decision today thus does not preclude the possibility of deference to the trial court, despite its failure to supply a statement of reasons, when the record leaves no room for doubt as to the trial court's reasons for granting a new trial and its resolution of conflicting evidence supporting those reasons—as may be the case where the motion for new trial alleged only a single, specific instance of juror misconduct. When the reviewing court is confident both that the trial court carefully deliberated before ordering a new trial and in what findings the trial court must have made in entering its order—i.e., when the statute's purposes have been satisfied—it seems to me that the interests in accuracy, efficiency, and functional competence may indicate that the new trial order should be reviewed under an abuse-of-discretion standard.

George, C. J., and Moreno, J., concurred.