Filed 11/17/14  Ybarra v. Lindgren CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| HENRY B. YBARRA, | C073705 |
| Plaintiff and Respondent, | (Super. Ct. No. PC20110670) |
| v. | |
| DAVID LINDGREN, | |
| Defendant and Appellant. | |

Following a defense verdict that defendant's negligence in rear-ending plaintiff Henry Ybarra's car at the bottom of a hill in San Francisco on his way home after major pancreatic surgery was not a substantial factor in causing a large hematoma and a 30-pound weight loss, the trial court granted plaintiff's motion for a new trial based on insufficiency of the evidence.  Plaintiff's surgeon had testified that the collision caused the hematoma; the defense expert also testified it was more probable than not, or in other words, there was a 51 percent likelihood, the accident was a substantial factor in causing plaintiff's injury.  The trial court explained there was no evidence to support the jury's finding that the collision was not a substantial factor in causing plaintiff's hematoma.

1

Because the written tentative ruling was incorporated into the minute order granting the motion for a new trial and contained both the grounds and reasons as required by Code of Civil Procedure section 657, we reject defendant David Lindgren's contention the judgment should be reinstated. And because there is substantial evidence to support the trial court's ruling, we affirm the order granting a new trial.

**FACTS**

On August 19, 2010, plaintiff, a diabetic, underwent surgery on his pancreas at the San Francisco Veterans Administration Medical Center. After he developed a blockage of an artery in his lung, his surgeon, Dr. Lygia Stewart, prescribed a blood thinner. A CT scan taken before he left the hospital revealed "normal changes after surgery." He was eating normally before he left the hospital.

Eleven days after the surgery, plaintiff's wife picked him up from the hospital with a friend. Plaintiff, who was sedated and wearing a diaper because he could not control his bowel movements, rode in the front passenger seat with his seat belt fastened over his abdominal incision. They were in the car for about 20 minutes when plaintiff's wife came to a stop at the bottom of a hill. While stopped, they were rear-ended by defendant, who admitted negligence. Plaintiff's wife described the impact as very sudden and very hard. She felt like she "got lifted" and the seat belt locked up on her. Plaintiff testified the jolt was severe and "the belt strap really, really tugged on me because [it] shoved me forward." The passenger in the backseat described the impact as a "pretty big hit" and said it felt like a "great big hand" came along and threw her like a toy. There was, however, little damage to the cars and plaintiff did not seek immediate emergency treatment.

Plaintiff's symptoms, in fact, appeared gradually over time. When he spoke to someone in his surgeon's office on September 1, he stated he was feeling "strong taking my medications," and he had been in an automobile collision but had not suffered any

2

physical injuries. He began to suffer from nausea and a loss of appetite but did not return to the hospital.

Plaintiff's surgeon testified at her deposition that by his six-week checkup in October, plaintiff was losing weight. Plaintiff preferred not to drive from his home in El Dorado to San Francisco for doctor's appointments given the expense and danger involved. By November his nausea had improved after taking an over-the-counter medication. But another CT scan in December confirmed a "large complex fluid collection near the operative site." Plaintiff lost about 30 pounds.

By February 2011 plaintiff felt better. Eventually the hematoma dissolved without medical intervention. He was able to return to work. In a letter dated February 1, his surgeon wrote: "Given the the [*sic*] fact that a CT scan obtained prior to the accident was normal, the data indicate that the accident led to an injury of the operative area leading to the fluid collection. His anti-coagulation may have contributed to this, but he would not have had a problem without the injury from the accident."

In her deposition testimony read to the jury at trial, the surgeon further explained that it was the motor vehicle accident which led to the injury that caused the fluid collection. She stated: "[W]e had a CT scan a few days before he left that showed really normal post operative changes, no big fluid collection. And the other part that was very important, he was eating normally. He was able to take in a diet and was really very good with that. When he came back after the accident, he had what we call early satiety, what it means is when you eat you fill up very fast. It seems like you eat just a little bit and you are very full. If you look at his CAT scan, you can see this fluid collection. You used that word 'fluid collection' kind of as a generic word, but if this fluid collection is a hematoma, you can see where it's related to the stomach actually pushing on the stomach. Over time, if you look at the subsequent CT scan obtained later, you see it getting smaller, and then finally getting very small and the most recent one. And now he is able to eat much better. You can see the stomach is no longer compressed by this and putting

all of that together with the constellation of findings, its appearance, it[']s most consistent with a hematoma, and temporarily it seemed to be related to that traffic accident." She concluded it was more likely that the accident caused the hematoma.

Defendant's medical expert, Dr. John Jay Becchetti, had retired from his surgical practice several years before he testified, and it was the first time he had testified as an expert witness. He agreed with Dr. Stewart that the blood mass was a hematoma and it was more probable it had been caused by the collision. But he believed "[t]here are subtleties besides the fact that the seat belt could have caused it." The only subtlety he suggested was the existence of a John Hopkins review of 260 distal pancreatectomies in which 4 percent of the cases involved spontaneous hemorrhages. He did not have the citation or a copy of the study. The 4 percent did not necessarily involve hematomas; rather, according to Dr. Becchetti, they may have involved "free blood." Nevertheless, he conceded that if he was forced to take a position whether plaintiff suffered a spontaneous hematoma or that the hematoma was a result of the collision, "I would say the trauma was the stronger position." Although he repeated that he hated to avoid the so-called subtleties, he testified there was a 51 percent likelihood the accident caused the hematoma.

By a vote of 9 to 3, the jury found that defendant's negligence was not a substantial factor in causing plaintiff's hematoma. Plaintiff moved for a new trial on the grounds there was insufficient evidence to support the jury verdict and that the verdict was against the law.

The court issued a written tentative ruling we describe in relevant part below. At the hearing on the motion for a new trial, the court stated: "I agree with you the right to a trial by jury is one of the most sacred rights we have in this country, but what I heard -- and I mean I -- what I feel really doesn't amount to a hill of beans in this matter, but there has to be some evidence for the jury to consider, and in this case we had one expert who said the accident definitely was a substantial factor, and we had another expert that said

4

it's more probable than not that the accident was a substantial factor. There was no evidence that it was not a substantial factor, and based upon that, I think we do have to vacate the jury's verdict. It's not something I do lightly. It's not something I enjoy doing at all. I think the jury system is the best system we have by and large for determining these things, but under these circumstances, I don't think we have any choice. So I am going to adopt the tentative ruling as the final order of the court."

The order vacating the jury verdict was entered and a new trial was granted. Defendant appeals.

## DISCUSSION

### I

Defendant's threshold issue is a procedural one. Defendant insists that we cannot provide a meaningful review of the trial court's order granting a new trial because it failed to provide a written "specification of reasons" as strictly required by Code of Civil Procedure sections 657 and 660. Section 657 provides, in part: "When a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated.

"A new trial shall not be granted upon the ground of insufficiency of the evidence to justify the verdict or other decision, nor upon the ground of excessive or inadequate damages, unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision.

"The order passing upon and determining the motion must be made and entered as provided in [Code of Civil Procedure] Section 660 and if the motion is granted must state the ground or grounds relied upon by the court, and may contain the specification of reasons. If an order granting such motion does not contain such specification of reasons, the court must, within 10 days after filing such order, prepare, sign and file such

5

specification of reasons in writing with the clerk. The court shall not direct the attorney for a party to prepare either or both said order and said specification of reasons."

Defendant reminds us that nothing less than perfect compliance with the terms of the statute can be tolerated. (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 634 (*Oakland Raiders*).) Although the courts routinely lament the injustice suffered by the party in whose favor the new trial was granted as a result of the trial court's blunder, they strictly enforce the statute. (*Sanchez-Corea v. Bank of America* (1985) 38 Cal.3d 892, 905, fn. 5.) Thus, substantial compliance is insufficient, as is a record of the court's oral explanation of its reasons. (*La Manna v. Stewart* (1975) 13 Cal.3d 413, 418.) Errors cannot be corrected on remand. (*Mercer v. Perez* (1968) 68 Cal.2d 104, 122-123 (*Mercer*).) In this milieu, defendant contends that the trial court's signed order is woefully deficient because it does not set forth any reasons for its ruling.

A signed order, however, is only one of the two ways in which a trial court may determine a motion for a new trial. Written in the disjunctive, Code of Civil Procedure section 660 states, in relevant part: "A motion for a new trial is not determined within the meaning of this section until an order ruling on the motion (1) is entered in the permanent minutes of the court or (2) is signed by the judge and filed with the clerk. The entry of a new trial order in the permanent minutes of the court shall constitute a determination of the motion even though such minute order as entered expressly directs that a written order be prepared, signed and filed. . . ."

Like the unsuccessful appellant in *Kolar v. County of Los Angeles* (1976) 54 Cal.App.3d 873 (*Kolar*), defendant relies on *Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51 for the erroneous proposition that the minute order must be signed by the judge. Not so, found the court in *Kolar*. "The code sections referred to contain no such requirement. The motion is determined by minute order entered in the permanent minutes or by an order prepared by the court, signed and filed with the clerk. In the

6

instant case the former method was adopted by the judge." (*Kolar*, at p. 876.) The court in *Kolar* explained that the order granting a new trial in *Stevens* was held improper because there was no written specification of reasons, not because the minute order was not signed. Indeed, the signature was not at issue. (*Kolar*, at p. 876.) The question in *Stevens*, unlike *Kolar*, was whether the oral reasons provided at the time of the hearing could be used to satisfy the statute, and the court gave a resounding no. (*Kolar*, at pp. 876-877.)

Defendant accuses plaintiff of concocting a new rule unsupported by any case authority that a tentative ruling suffices as a written order. There is no need for creating any new rule in this case. As *Kolar* makes clear, an unsigned minute order complies with Code of Civil Procedure section 657 as augmented by section 660 of that code.

Here, the minute order entered on March 7, 2013, incorporates the written tentative opinion. The order states: "The Court issued its tentative ruling pursuant to [the Superior Court of El Dorado County,] Local Rule[s, rule] 7.10.05; as fully set forth in the attached written opinion." The attached five-page tentative opinion explains the grounds and the reasons for granting a new trial. As pertinent to the insufficiency ground, the court understood that it was required to weigh the evidence and judge the credibility of witnesses and explained: "Plaintiff's medical expert testified that the subject hematoma was caused by the motor vehicle accident. The defense medical expert testified that he was of the opinion that it was more likely - 51% - that the motor vehicle accident caused plaintiff's hematoma, with some reservations. He further testified as to a study finding spontaneous bleeding occurring in 4% of patients after such surgeries and if forced to take a position, he would say the trauma was a stronger position, but can't say that with certainty.

"After weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the jury clearly should have reached a different verdict or decision. The motion for new trial is granted."

7

By expressly attaching the written tentative opinion to the minute order, with the specification of reasons for granting the new trial, we conclude the trial court merely incorporated its tentative ruling into the official minutes following oral argument. The court thereby complied with the letter and the spirit of the law. (See also *Miller v. Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 697-698 [permitting the trial court to cross-reference another part of the record].) We reject defendant's argument that utilizing a tentative ruling renders oral argument meaningless. To say that the argument was not persuasive does not mean the court did not listen and carefully consider the oral advocacy. Rather, as is evidenced by the transcript of the hearing, the court did engage with counsel and was simply not convinced by the arguments made at the hearing.

We recognize that strict compliance with the statutes is required and we are not at liberty to loosen the rigid requirements the Legislature has established. But as the court correctly pointed out in *Kolar*, the statutes do not require the trial court to sign a minute order. (*Kolar*, *supra*, 54 Cal.App.3d at p. 876.) Consequently, a minute order that incorporates a written tentative ruling complies with the strict letter of the law. Moreover, it satisfies the dual purposes of the statute as well by promoting judicial deliberation before deciding and facilitating meaningful appellate review. In the tentative ruling, the court recounted the substance of the expert testimony relevant to the jury's finding that the collision was not a substantial factor in causing plaintiff's hematoma. Counsel failed to change the court's evaluation of the evidence during argument at the hearing on the new trial motion. But the written ruling facilitates our review and assures us that the court carefully deliberated before reaching a decision. The statutes require nothing more.

## II

Since the minute order satisfies the procedural requirements of the statute, we must determine whether the court's "specification of reasons" meets the substantive statutory requirements. (Code Civ. Proc., § 657.) "When the trial court provides a

statement of reasons as required by section 657, the appropriate standard of judicial review is one that defers to the trial court's resolution of conflicts in the evidence and inquires only whether the court's decision was an abuse of discretion." (*Oakland Raiders*, *supra*, 41 Cal.4th at p. 636.) "The reason for this deference 'is that the trial court, in ruling on [a new trial] motion, sits . . . as an independent trier of fact.' [Citation.] Therefore, the trial court's factual determinations, reflected in its decision to grant the new trial, are entitled to the same deference that an appellate court would ordinarily accord a jury's factual determinations.

"The trial court sits much closer to the evidence than an appellate court. Even the most comprehensive study of a trial court record cannot replace the immediacy of being present at the trial, watching and hearing as the evidence unfolds. The trial court, therefore, is in the best position to assess the reliability of a jury's verdict and, to this end, the Legislature has granted trial courts broad discretion to order new trials." (*Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 412 (*Lane*).)

The trial court's task in stating its reasons is not onerous. "[I]t will be sufficient if the judge who grants a new trial furnishes a concise but clear statement of the reasons why he finds one or more of the grounds of the motion to be applicable to the case before him. . . . [I]f the ground relied upon is 'insufficiency of the evidence' the judge must briefly recite the respects in which he finds the evidence to be legally inadequate; . . . [S]uch an order must briefly identify the portion of the record which convinces the judge 'that the court or jury clearly should have reached a different verdict or decision.' " (*Mercer*, *supra*, 68 Cal.2d at pp. 115-116.) " 'No hard and fast rule can be laid down as to the content of such a specification, and it will necessarily vary according to the facts and circumstances of each case.' " (*Scala v. Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 370.)

The issue before the trial court in considering the motion for a new trial was discrete–was there sufficient evidence to support the jury's finding that the automobile

9

collision was not a substantial factor in causing plaintiff's hematoma? The trial court provided a thorough recitation of the evidence. The court summarized the expert testimony on the issue and pointed out that there was no evidence to the contrary. As a result, its statement of reasons facilitates meaningful appellate review. The court left no doubt that it granted the motion for a new trial because all of the expert testimony suggested that the collision was a substantial factor, at least by a preponderance of the evidence.

Defendant argues that the jury could have discounted the credibility of both experts and rejected their testimony. But the question before us is not whether there was substantial evidence to support the jury's finding—it is whether the trial court abused its discretion. "In other words, 'the presumption of correctness normally accorded on appeal to the jury's verdict is replaced by a presumption in favor of the [new trial] order.' [Citation.]" (*Lane*, *supra*, 22 Cal.4th at p. 412, first brackets in original.) On this record, we can find no abuse of discretion. The trial judge, sitting as an independent trier of fact, concluded that because both experts testified that, by a preponderance of the evidence, the collision caused the injury and there was no evidence to suggest otherwise, the evidence was insufficient to support the jury verdict. The court's statement of reasons complies with Code of Civil Procedure section 657 and supports its ultimate determination to grant a new trial. We must affirm that determination.

## DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

           RAYE         , P. J.

We concur:

      BUTZ        , J.

      MAURO     , J.