Filed 10/1/14  Kindt v. Trango Systems CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SHANE KINDT, | D062404 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2010-00102377-CU-OR-CTL) |
| TRANGO SYSTEMS, INC., | |
| Defendant and Appellant. | |

APPEALS from an order of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed in part and reversed in part.

The McMillan Law Firm, Scott A. McMillan and Evan A Kalooky for Plaintiff and Appellant.

Harrison & Bodell, Harry W. Harrison; Boudreau Williams and Jon R. Williams for Defendant and Appellant.

After Shane Kindt resigned from employment at Trango Systems, Inc. (Trango), he sued Trango on a variety of legal and equitable theories, including Labor Code violations, interference with his subsequent employment, and attempts to enforce a

nonsolicitation agreement he contends was facially invalid under Business and Professions Code section 16600.[1]  During trial, the court ruled the nonsolicitation agreement was facially valid, and so instructed the jury.  The jury found in Trango's favor on Kindt's legal claims and the trial court found in Trango's favor on his equitable claims.  Kindt moved for a new trial, which the court granted on the basis of jury misconduct as to his legal claims, but denied as to his equitable claims.

Trango appeals the court's order granting a new trial on Kindt's legal claims, challenging the sufficiency of his evidentiary showing of jury misconduct and of the trial court's statement of reasons for granting the motion.  Kindt appeals the court's order denying a new trial on his equitable claims, challenging: (1) the court's determination that the nonsolicitation agreement is facially valid; (2) the sufficiency of the trial court's statement of decision because it essentially incorporated the jury's tainted findings; and (3) the court's exclusion of evidence regarding Trango's litigation history.  We conclude the trial court did not err by granting a new trial on Kindt's legal claims or by excluding evidence of Trango's litigation history.  However, we also conclude the court erred in its determination of the facial validity of the nonsolicitation agreement and in rendering an insufficient statement of decision.  We affirm the order granting a new trial as to Kindt's legal claims, and reverse the order denying a new trial as to his equitable claims.

_____

[1]     Business and Professions Code section 16600 provides:  " Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  All further statutory references are to the Business and Professions Code unless otherwise indicated.

FACTUAL AND PROCEDURAL BACKGROUND

Trango is a San Diego-based provider of wireless microwave communication systems. Kindt joined Trango in 2006 as a regional sales manager in Dallas, Texas. Among the paperwork Kindt signed at the beginning of his employment was a "confidential information and invention assignment agreement" (Confidentiality Agreement).

In early 2008, Trango's owner, Zdravko Divjak, met with Kindt to discuss a promotion that would require him to relocate to San Diego. When Kindt expressed reservations about relocating, Divjak suggested a "guarantee or an assurance" that would require either party to provide six months' notice before terminating their relationship. Trango's April 15, 2008, offer letter to Kindt (hereafter the Letter Agreement) included the following provision regarding termination:

> "Trango . . . is an 'at-will' employer. This means that either you or Trango . . . may terminate your employment, with or without cause, at any time. However, in the case that either you or the Company choose to terminate our relationship, both you and the Company will commit to a continued six months of employment, paid at your standard rate of pay, to find a suitable replacement."

Kindt accepted the offer the following day and began commuting from Dallas to San Diego while transitioning into the new position, eventually relocating in San Diego with his family in August 2008. On November 10, 2008, Kindt handed his supervisor, John Seaman, a resignation letter that stated: "I will be moving my family back to Texas at the end of November and I am prepared to fulfill my [six-] month term as set forth in the [Letter Agreement]. This will make my final day of employment with Trango . . .

3

May 8th, 2009[,] as the 10th falls on a Sunday . . . . [¶] . . . I will do my best to assist Trango . . . in finding a suitable replacement for my position if this is requested of me." Within days, Trango identified an internal replacement for Kindt. Seaman informed Kindt that his last day with Trango would be November 30, 2008, not May 8, 2009. He did not have a new job lined up and expressed displeasure to Seaman.

After some apparent confusion over what Kindt's last day at Trango would be, Trango confirmed it would need him through the end of November 2008 and he would receive his termination paperwork and final paycheck then. When Kindt called in sick on November 19, Trango notified him he was no longer needed and would only be permitted to return to retrieve personal property and to return company property. Trango provided Kindt with separation paperwork on November 19 and informed him his final paycheck would be directly deposited on November 28.

On November 22, Kindt demanded prompt payment of his regular pay through November 19, unused vacation pay, and unpaid salary for the remaining portion of the six-month termination notice period specified in the Letter Agreement. He warned that waiting time penalties would accrue for every day he was not paid.[2]

On November 28, Kindt received his final paycheck by direct deposit. Trango paid him his regular wages through November 18, paid holiday pay for Thanksgiving and the following day, and used his vacation pay for the remainder of the month. The

---

[2] Labor Code section 203, subdivision (a), provides in pertinent part: "If an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced . . . ."

paycheck included the balance of Kindt's unused vacation time, but did not include pay for the six-month notice period or any waiting time penalties.

Kindt moved back to Texas in early December and began seeking new employment. With help from former Trango colleague Scott Carlson, he received a job offer from Convergence Technologies (CTI). He accepted that offer on December 9. Three days later, Seaman called Kindt to inform him that Trango was seeking a business relationship with CTI. According to Kindt, Seaman stated he was under the impression Kindt had filed a wrongful termination lawsuit against Trango and that if he dismissed it Trango would not interfere with his new employment at CTI. According to Seaman, he reminded Kindt of his obligations under the Confidentiality Agreement, but denied threatening his employment prospects.

On December 19, Trango's senior vice president and general counsel, Ace Blackburn, sent an e-mail to CTI employee Charles Wu with the subject line "Trango Systems Non-Compete Agreement/Shane Kindt/CTI." The e-mail attached the Confidentiality Agreement and a letter stating:

> "We are hopeful that you will do your part to ensure compliance
> with this Agreement by Mr. Kindt. To the extent that we learn that
> Mr. Kindt, while employed by CTI, has directly or indirectly
> solicited business from any Trango customer, has used any of
> Trango's Confidential Information, or has violated in any other ways
> his Agreement with Trango, we will seek all available legal remedies
> against CTI and Mr. Kindt."

Shortly after Blackburn's e-mail to Wu, CTI employee Mark Kruer called Seaman to discuss Kindt. According to Kruer, Seaman gave the impression CTI was "better off just not hiring him . . . because [Trango] will take exception to this if you do." On

5

December 22, CTI terminated Kindt over concerns about becoming involved in litigation with Trango. CTI asked Kindt to continue working in an independent contractor capacity, but he declined. In February 2009 Kindt found a new job with a government contractor supporting military operations in Afghanistan.

In October 2010, Kindt filed suit against Trango alleging nine causes of action.[3] His complaint alleged, generally, that the Letter Agreement entitled him to an additional six months' employment or pay, Trango owed him waiting time penalties for not delivering his final paycheck on his last day of work, Trango attempted to enforce the Confidentiality Agreement as an unlawful noncompete agreement, and Trango wrongfully interfered with his employment at CTI.

During trial, the court ruled the Confidentiality Agreement was facially valid under section 16600 and so instructed the jury.[4] The jury returned a verdict in Trango's favor on all of Kindt's legal claims. Kindt subsequently requested a separate bench trial and statement of decision on his equitable claims. The court denied his request for a

---

[3] Kindt asserted causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, failure to pay wages upon discharge, violations of Labor Code section 970 (by inducing relocation through misrepresentations), tortious interference with contract, intentional and negligent interference with prospective economic advantage, violation of section 16600, and unfair competition under section 17200 (by engaging in "illegal pay practices," attempting to enforce an unlawful noncompete agreement, and interfering with his subsequent employment).

[4] The court instructed the jury as follows: "Every contract by which anyone is restrained from engaging in a lawful business or profession of any kind is, to that extent, void. The Court has determined that the language of the [Confidentiality Agreement] is not void."

separate trial, issued a statement of decision denying relief on his equitable claims based primarily on the jury's findings, and entered judgment in Trango's favor.

Kindt filed motions for judgment notwithstanding the verdict (JNOV) and a new trial. The court denied the JNOV motion, but granted a new trial on all his legal claims because of jury misconduct. The court did not grant a new trial on his equitable claims, and did not explain the impact, if any, of the jury's misconduct on the jury findings the court cited in its statement of decision. Kindt and Trango each appealed.

I

*TRANGO'S APPEAL*

Trango appeals the trial court's order granting Kindt's motion for new trial on the basis of jury misconduct. Trango contends the order was not supported by admissible evidence of any misconduct, did not establish prejudice, and did not adequately state the reasons for granting the motion.

A. Additional Background

Kindt moved for a new trial on all his claims based on 17 alleged errors falling within five statutory grounds.[5] To support his claim of "[j]ury bias, misconduct, and irregularities," he submitted declarations from three jurors. Their testimony falls

---

[5] Kindt asserted four bases of error on the grounds of misconduct and irregularities of the jury under Code of Civil Procedure section 657, subdivisions 1 and 2; four bases of error on the ground that the verdict is against law under section 657, subdivision 6; three bases of error on the ground of insufficiency of the evidence under section 657, subdivision 6; five bases of error on the ground of irregularities in the proceedings of the court under section 657, subdivision 1; and one basis of error on the ground of irregularities in the proceedings of the adverse party under section 657, subdivision 1.

7

generally into three categories: (1) dissatisfaction with the selection of the foreperson and the foreperson's management of the deliberation process; (2) concern regarding the foreperson's potential pro-Trango bias based on her human resources (HR) work experience; and (3) the foreperson's and other jurors' discussion of law not addressed by jury instructions, and consideration of extrinsic evidence.

Regarding the third category, the juror declarations reveal that "several jurors [gave] legal opinions which were not included in the instructions the Judge gave us." This included the foreperson's assertion that "California [is] an at-will employment state" such that "the [Letter Agreement] was invalid, and the promise to allow continued employment for six months was invalid." The foreperson also stated "there [is] no law that stated that an employee had to be paid their final paycheck on the last day" of his or her employment.[6] One juror reported that the foreperson "cited California law approximately [30] times during deliberations, talked about what they were legally allowed to do in the shop that she worked in according to her HR experience, and discussed the details of the [payroll processing] system that her shop and [Trango] both use." Another juror reported that a juror stated Kindt could recover the waiting time penalties he was seeking in this action "from another California court."

---

6    This contradicts Labor Code section 201, subdivision (a), which provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

Trango filed an opposing brief, but did not submit counterdeclarations regarding jury deliberations. The trial court granted Kindt's motion for new trial as to his legal claims as follows:

> "The Motion for New Trial is GRANTED on the grounds of jury misconduct and irregularities in the proceedings of the jury. The undisputed declarations from Jurors 1, 7 and Alternate 1 demonstrate improper and prejudicial discussion and explanations of the law during deliberations."

B. Governing Legal Principles

"The authority of a trial court in this state to grant a new trial is established and circumscribed by statute." (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 633 (*Oakland Raiders*).) Code of Civil Procedure section 657 identifies seven grounds for a new trial motion, including irregularity in the proceedings and jury misconduct.

When a party seeks a new trial based on jury misconduct, the court undertakes a three-step inquiry. (*People v. Dorsey* (1995) 34 Cal.App.4th 694, 703.) First, the court must determine whether the declarations offered in support of the motion are admissible. (*Id*. at p. 703.) Under Evidence Code section 1150, only evidence of objective facts is admissible to prove juror misconduct. (*In re Stankewitz* (1985) 40 Cal.3d 391, 397.) Evidence regarding how such objective facts may have influenced jurors' subjective thought processes is inadmissible. (Evid. Code, § 1150, subd. (a).)

After the court determines the supporting declarations are admissible, it must next consider whether the facts establish misconduct. (*People v. Dorsey*, *supra*, 34 Cal.App.4th at pp. 703-704.)

9

Finally, assuming misconduct is found, the court must determine whether it was prejudicial.  (*People v. Duran* (1996) 50 Cal.App.4th 103, 112-113; *People v. Hord* (1993) 15 Cal.App.4th 711, 724.)  "Juror misconduct raises a rebuttal presumption of prejudice . . . ."  (*People v. Dykes* (2009) 46 Cal.4th 731, 809; *Jones v. Sieve* (1988) 203 Cal.App.3d 359, 367 ["once acts of jury misconduct are established, the presumption of prejudice becomes conclusive unless rebutted by the prevailing party"].)  The presumption of prejudice "may be rebutted by an affirmative evidentiary showing that prejudice does not exist or by a reviewing court's examination of the entire record to determine whether there is a reasonable probability of actual harm to the complaining party resulting from the misconduct."  (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 417.)

An order granting a new trial motion must state the ground on which it is based and contain a statement of reasons supporting the stated ground.  (*Oakland Raiders*, *supra*, 41 Cal.4th at pp. 633-634.)  "A statement of grounds that reasonably approximates the statutory language is sufficient.  [Citations.]  The statement of 'reasons,' on the other hand, should be specific enough to facilitate appellate review and avoid any need for the appellate court to rely on inference or speculation."  (*Id.* at p. 634.)

When the trial court provides a statement of reasons as required by Code of Civil Procedure section 657, we review the court's decision for an abuse of discretion.  (*Oakland Raiders*, *supra*, 41 Cal.4th at p. 636.)  "[T]he absence of a statement of reasons calls for independent review . . . ."  (*Id.* at p. 640.)

C. Analysis

*1. Statement of Reasons*

We begin by addressing the sufficiency of the trial court's statement of reasons because that will determine our standard of review. (*Oakland Raiders*, *supra*, 41 Cal.4th at pp. 636, 640.) Trango contends the trial court's "curt explanation" for its ruling is insufficient.

Our Supreme Court has provided the following guidance regarding the sufficiency of a statement of reasons:

> "To avoid overtaxing our already burdened trial courts, it will be sufficient if the judge who grants a new trial furnishes a concise but clear statement of the reasons why he finds one or more of the grounds of the motion to be applicable to the case before him. No hard and fast rule can be laid down as to the content of such a specification, and it will necessarily vary according to the facts and circumstances of each case. For example, if the ground is 'irregularity in the proceedings' caused by counsel's referring to insurance, the judge should state that the reason for his ruling was the misconduct of counsel in making such reference; if the ground is 'misconduct of the jury' through their resorting to chance, the judge should specify this improper method of deliberation as the basis of his action; if the ground is that the decision is 'against the law' because of a failure to find on a material issue, the judge should so state and should identify that issue." (*Mercer v. Perez* (1968) 68 Cal.2d 104, 115.)

Kindt moved for a new trial on 17 bases within five statutory grounds. (See fn. 5, *ante*.) The trial court's order specifies which of the five proffered grounds it granted: "the grounds of jury misconduct and irregularities in the proceedings of the jury." By doing so, the court narrowed the universe of possible reasons from Kindt's original 17 down to only those four based on jury misconduct. The trial court then specified the

11

reason on which its grant of the motion was based: "improper and prejudicial discussion and explanations of the law during deliberations." Finally, the order identifies the evidence on which it was granted: "[t]he undisputed declarations from Jurors 1, 7 and Alternate 1." We find the court's order "specific enough to facilitate appellate review" (*Oakland Raiders*, *supra*, 41 Cal.4th at p. 634), and therefore review it for an abuse of discretion (*id*. at p. 636.)

### 2. *Admissibility of Juror Declarations*

Trango contends the trial court erred in relying on the juror declarations because they are "rife with inadmissible statements about the deliberative process" in violation of Evidence Code section 1150.[7] Trango asserts, for example, that the declarations "include repeated statements about how the dissenting jurors 'felt' about the deliberative process, how they 'got the impression' that certain things happened, how they 'had the feeling' that the deliberations were being hurried, and how certain comments 'were important to jurors,' or how they 'understood' certain jurors were considering questions on the verdict form based upon their prior life experience . . . ." Trango's challenge is not persuasive. The snippets to which Trango objects relate to the foreperson's alleged bias and mismanagement of the deliberation process. But that is not the basis on which the trial

[7]    Kindt suggests Trango forfeited this objection by failing to assert it—or any other objections to the juror declarations—below. Trango counters that it asserted the objection in its brief in opposition to Kindt's motion for new trial. Of course, the better practice is to file evidentiary objections "in a *separate document* (rather than as part of opposing points and authorities)." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) ¶ 9:102.6, p. 9(I)-83; *Schoendorf v. U.D. Registry, Inc*. (2002) 97 Cal.App.4th 227, 240, fn. 2, citing Weil & Brown, *supra,* 9:102.6, p. 9(I)-83.) We will assume without deciding that Trango preserved this objection.

court granted Kindt's motion—it was the jurors' "discussion and explanations of the law during deliberations." Trango never objected to the declarations in that regard, and it is not likely to have successfully done so. (See *In re Stankewitz*, *supra*, 40 Cal.3d at p. 398 ["Among the overt acts that are admissible and to which jurors are competent to testify are statements[, particularly when] . . . [¶] . . . the very making of the statement sought to be admitted would itself constitute misconduct."].)

Trango argues for the first time on appeal that certain aspects of the declarations lack foundation regarding the jurors' discussions of the law during deliberations. Trango never raised those objections with the trial court and, consequently, has forfeited them. (*People v. Engstrom* (2011) 201 Cal.App.4th 174, 184; Evid. Code, § 353, subd. (a).) We conclude the trial court did not abuse its discretion in considering the juror declarations to the extent they relate to "discussion and explanations of the law during deliberations."

*3. Misconduct*

"In our system of justice it is the trial court that determines the law to be applied to the facts of the case, and the jury is 'bound . . . to receive as law what is laid down as such by the court.' [Citation.] 'Of course, it is a fundamental and historic precept of our judicial system that jurors are restricted solely to the determination of *factual* questions and are bound by the law as given them by the court. They are not allowed either to determine what the law *is* or what the law *should be*.' " (*In re Stankewitz, supra,* 40 Cal.3d at p. 399; *People v. Marshall* (1990) 50 Cal.3d 907, 950 ["the introduction of extraneous law, whether erroneous or not, constitutes misconduct"].) The juror

13

declarations establish that the foreperson's and other jurors' discussions and explanations of the law run afoul of this precept.

Trango's only response to the juror's discussions and explanations of the law is that the foreperson's references to at-will employment were consistent with the Confidentiality Agreement, which states in Section 3 that "I understand and acknowledge that my Relationship with the Company is and shall continue to be at-will, as defined under applicable law, meaning that either I or the Company may terminate the Relationship at any time for any reason or for no reason, without further obligation or liability." However, Section 1 of the same agreement contemplates that the parties may have modified what otherwise would have been an at-will relationship: "I understand and acknowledge that this Agreement does not alter, amend or expand upon any rights I may have to continue in the employ of, . . . or the duration of my employment . . . with, the Company under any existing agreements between the Company and me or under applicable law." On the record before us, we cannot conclude the trial court abused its discretion in finding the jurors' discussion of the law regarding at-will employment—not to mention discussions of the law regarding payment of wages upon termination, which go unaddressed by Trango—constituted jury misconduct.

*4. Prejudice*

As discussed above, juror misconduct raises a rebuttable presumption of prejudice. *People v. Dykes*, *supra*, 46 Cal.4th at p. 809.) That presumption "is even stronger when, as here, the misconduct goes to a key issue in the case" (*In re Stankewitz, supra,* 40 Cal.3d at p. 402) and the jurors were divided (*Weathers v. Kaiser Foundation Hospitals*

14

(1971) 5 Cal.3d 98, 110 ["Since the verdict was nine to three, the disqualification for bias of any one of the majority jurors could have resulted in a different verdict.  Under the circumstances, the order granting the new trial is sufficiently supported by competent evidence."]).

Trango never specifically addresses the presumption of prejudice that arose from its failure to controvert the juror declarations, which distinguishes this case from those on which Trango relies.  (*Hasson v. Ford Motor Co.*, *supra*, 32 Cal.3d at pp. 408-410 [counterdeclarations filed]; *Enyart v. City of Los Angeles* (1999) 76 Cal.App.4th 499, 510 [counterdeclarations filed]; *People v. Collins* (2010) 49 Cal.4th 175, 237, 255-256 [evidentiary hearing during which three jurors testified; court's analysis addressed misconduct, not prejudice].)  In addition, we are unpersuaded by Trango's argument that "the trial court's own rulings on the related JNOV motion and Kindt's equitable claims *seem to suggest* that the outcome would have been the same" absent juror misconduct. (Italics added.)  The fact the trial court ultimately reached the same conclusion as the jurors does not mean the *jurors* would not have reached a different outcome in the absence of misconduct.  We conclude the trial court did not abuse its discretion in concluding the jury misconduct was prejudicial to Kindt.

II

*KINDT'S APPEAL*

Kindt contends the trial court erred by denying his motion for new trial as to his equitable claims.  In doing so, he challenges the court's determination that the Confidentiality Agreement is facially valid under section 16600, the sufficiency of the

15

statement of decision, and the court's exclusion of evidence regarding Trango's litigation history. We conclude the trial court erred by denying Kindt's motion for a new trial on his equitable claims.

A. Facial Validity of the Confidentiality Agreement Under Section 16600

Kindt contends the trial court erred by concluding the Confidentiality Agreement did not, on its face, constitute an unlawful restraint on employment under section 16600. He argues three provisions—a broad definition of confidential information, a prohibition on the use of confidential information in soliciting Trango's customers, and a restriction on soliciting Trango's employees—are invalid under section 16600. We agree that the overly broad definition of confidential information, when coupled with the prohibition of its use in soliciting customers, makes the Confidentiality Agreement facially invalid. We disagree, however, with respect to solicitation of Trango's employees.

*1. Governing Legal Principles*

Section 16600 provides: "Except as provided in this chapter,[8] every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." It "evinces a settled legislative policy in favor of open competition and employee mobility." (*Edwards*, *supra*, 44 Cal.4th at p. 946.) As such, "[n]oncompetition agreements are invalid under section 16600 in California, even if

---

8     The chapter excepts noncompetition agreements in the sale or dissolution of corporations, partnerships, and limited liability corporations. (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 945-946 (*Edwards*), citing §§ 16601, 16602, 16602.5.) Trango does not contend any of these exceptions apply here.

16

narrowly drawn, unless they fall within the applicable statutory exceptions . . . ."  (*Id*. at p. 955.)

An agreement need not outright *prohibit* competitive employment to be invalid under section 16600, it need only *restrain* it.  (*Edwards*, *supra*, 44 Cal.4th at p. 946; *The Retirement Group v. Galante* (2009) 176 Cal.App.4th 1226, 1235 (*Galante*).)  Courts have deemed invalid agreements that unduly restrain a former employee from soliciting business from his or her former employer's customers.  (See *Dowell v. Biosense Webster, Inc*. (2009) 179 Cal.App.4th 564, 575 (*Dowell*).)

This is not to say employers are powerless to prevent their former employees from unfairly competing against them.  To the contrary, in *Galante* we observed that "[a]n equally lengthy line of cases has consistently held former employees may not misappropriate the former employer's trade secrets to unfairly compete with the former employer."  (*Galante*, *supra*, 176 Cal.App.4th at p. 1237.)  In accordance with this "so-called trade secret exception to section 16600" (*Edwards*, *supra*, 44 Cal.4th at p. 946, fn. 4), "courts have repeatedly held a former employee may be barred from soliciting existing customers to redirect their business away from the former employer and to the employee's new business *if the employee is utilizing trade secret information* to solicit those customers."  (*Galante,* at p. 1237; *Dowell*, *supra*, 179 Cal.App.4th at pp. 575-576.)

In reconciling the apparent tension between the *Edwards* court's admonition that we recognize only statutory exceptions to section 16600, on the one hand, and the equally long line of cases protecting employers' trade secrets, on the other—a balancing act the *Edwards* court did not need to address (*Edwards*, *supra*, 44 Cal.4th at p. 946, fn. 4)—we

distilled the following in *Galante*: "section 16600 bars a court from specifically enforcing (by way of injunctive relief) a *contractual* clause purporting to ban a former employee from soliciting former customers to transfer their business away from the former employer to the employee's new business, but a court may enjoin *tortious* conduct (as violative of either the Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.) and/or the unfair competition law) by banning the former employee from using trade secret information to identify existing customers, to facilitate the solicitation of such customers, or to otherwise unfairly compete with the former employer. Viewed in this light, therefore, the conduct is enjoinable *not* because it falls within a judicially created 'exception' to section 16600's ban on contractual nonsolicitation clauses, but is instead enjoinable because it is wrongful independent of any contractual undertaking." (*Galante*, *supra*, 176 Cal.App.4th at p. 1238.) Stated differently, "it is not the solicitation of the customers, but is instead the unfair competition or misuse of trade secret information, that may be enjoined." (*Id.* at pp. 1239-1240.)

　　*2. Analysis*

　　We begin by construing de novo the provisions of the Confidentiality Agreement Kindt contends unlawfully restrain his employment by restricting his solicitation of Trango customers. (*D'Sa v. Playhut, Inc.* (2000) 85 Cal.App.4th 927, 934 (*D'Sa*).) The second clause of Section 8 of the Confidentiality Agreement provides:

> "[D]uring my Relationship with the Company and at any time following termination of my Relationship with the Company for any reason, with or without cause, I shall not use any Confidential Information of the Company to attempt to negatively influence any of the Company's clients or customers from purchasing Company

18

products or services or to solicit or influence or attempt to influence any client, customer or other person either directly or indirectly, to direct his or its purchase of products and/or services to any person, firm, corporation, institution or other entity in competition with the business of the Company."

Section 4 of the Confidentiality Agreement, in turn, defines confidential information as follows:

"I understand that 'Confidential Information' means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, suppliers, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the Relationship), prices and costs, markets, software, developments, inventions, laboratory notebooks, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, licenses, finances, budgets or other business information disclosed to me by the Company either directly or indirectly in writing, orally or by drawings or observation of parts or equipment or created by me during the period of the Relationship, whether or not during working hours. I understand that 'Confidential Information' includes, but is not limited to, information pertaining to any aspects of the Company's business which is either information not known by actual or potential competitors of the Company or other third parties not under confidentiality obligations to the Company, or is otherwise proprietary information of the Company or its customers or suppliers, whether of a technical nature or otherwise. I further understand that Confidential Information does not include any of the foregoing items which has become publicly and widely known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved."

Invoking the common law trade secret exception to section 16600, Trango contends the provisions are valid because they "are meant only to protect Trango's trade secrets and confidential information . . . ." Although we, like the *Dowell* court, doubt the continued validity of the trade secret exception to section 16600 considering the decision

19

in *Edwards* (*Dowell*, *supra*, 179 Cal.App.4th at pp. 577-578), we need not resolve the issue here. Even were the exception valid, Trango's definition of confidential information and the restrictions on its use in soliciting customers "are not narrowly tailored or carefully limited to the protection of trade secrets, but are so broadly worded as to restrain competition." (*Id*. at p. 577.)

Under our holding in *Galante*, Trango can only restrain Kindt insofar as trade secret law will allow. (*Galante*, *supra*, 176 Cal.App.4th at p. 1238.) California's Uniform Trade Secrets Act defines a trade secret as follows: " 'Trade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process, that: [¶] (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and [¶] (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Civ. Code, § 3426.1, subd. (d).) Trango's definition of confidential information extends to matters far beyond this definition of trade secret.

For example, Trango's definition of confidential information includes "trade secrets," but it is by no means limited to them—it also includes "proprietary information, technical data . . . , or know-how." In addition, although Trango argues the definition is confined to trade secrets by its express exclusion of information that has "become publicly and widely known and made generally available," the definition contradicts itself because it also states it "includes, *but is not limited to* . . . information not known by actual or potential competitors of the Company . . . ." Trango's overly broad definition of

20

confidential information is substantially similar to the provision the *Dowell* court found facially invalid as unnecessarily exceeding the scope necessary to protect trade secrets. (*Dowell*, *supra*, 179 Cal.App.4th at pp. 568, 578 [defining confidential information as " 'information disclosed to me or known by me as a result of my employment by the COMPANY, not generally known to the trade or industry in which the COMPANY is engaged, about products, processes, technologies, machines, customers, clients, employees, services and strategies of the COMPANY, including, but not limited to . . . marketing, merchandising, selling, sales volumes or strategies, number or location of sales representatives, names or significance of the COMPANY's customers or clients or their employees or representatives, preferences, needs or requirements, purchasing histories, or other customer or client-specific information.' "]; see *D'Sa*, *supra*, 85 Cal.App.4th at p. 930.)

Kindt's allegations regarding Trango's conduct here demonstrate the perils of overly broad nonsolicitation provisions (or definitions of confidential information incorporated into them) and the ease with which they may be used preemptively to restrain conduct beyond that which may be enjoined by trade secret law. As the *D'Sa* court cautioned, "even if we could construe the covenant not to compete as a trade secret provision, it is not likely that the average employee . . . would so interpret it . . . . [M]any, if not most, employees would likely interpret the provision as a covenant not to compete, and might act according to their interpretation rather than consult an attorney to find out if their interpretation is correct." (*D'Sa*, *supra*, 85 Cal.App.4th at p. 935; see *Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 408 ["Employers could insert broad,

21

facially illegal covenants not to compete in their employment contracts. Many, perhaps most, employees would honor these clauses without consulting counsel or challenging the clause in court, thus directly undermining the statutory policy favoring competition."].)[9] We thus conclude the nonsolicitation clause of Section 8 of the Confidentiality Agreement, when coupled with the overly broad definition of confidential information in Section 4, is facially invalid under section 16600.

Kindt contends another clause in Section 8 of the Confidentiality Agreement prohibits him from soliciting Trango's employees,[10] and is also facially invalid under section 16600.[11] We disagree. An employer may validly contract with a former employee to restrain him from "raiding" other employees. For example, in *Loral Corp. v. Moyes* (1985) 174 Cal.App.3d 268, the court upheld a provision in an employment

---

[9]    We note that even Trango's general counsel appears to have interpreted the nonsolicitation provision as a covenant not to compete—the subject line of his e-mail to CTI referred to it as a "Non-Compete Agreement," and he testified that Kindt would be in breach of it if he, "out of spite, went head to head with Trango, using a competitor product."

[10]    The relevant portion of Section 8 of the Confidentiality Agreement provides: "I agree that during the term of my Relationship with the Company, and for a period of twenty-four (24) months immediately following the termination of my Relationship with the Company for any reason, whether with or without cause, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees or consultants to terminate their relationship with the Company, or attempt to solicit, induce, recruit, encourage or take away employees or consultants of the Company, either for myself or for any other person or entity."

[11]    Although Kindt is not alleged to have solicited any Trango employees, he argues the provision is nonetheless relevant because he was referred to CTI by another former Trango employee subject to the same restriction, which put Trango "in a position to exert leverage on CTI . . . ."

22

termination agreement in which the employee, Moyes, agreed not to "disrupt, damage, impair or interfere with the business of [Loral] . . . by way of interfering with or raiding its employees . . . ."  (*Id*. at pp. 274, 279.)  The *Loral* court found the restriction valid because it did not limit Moyes's ability to obtain other work, and only "slightly affect[ed]" Loral's other employees—it did not restrain them for being employed by Moyes's new employer; "[a]ll they los[t] is the option of being contacted by [Moyes] first."  (*Id*. at p. 279.)

Kindt's reliance on *VL Systems, Inc. v. Unisen, Inc.* (2007) 152 Cal.App.4th 708 is misplaced because that case involved an agreement in which a customer restrained its vendor from *ever hiring any of the customer's employees*.  (*Id*. at pp. 710, 715, 718.)  The court concluded "[s]uch a broad provision is not necessary to protect [the customer's] interests and is outweighed by the policy favoring freedom of mobility for employees." (*Id*. at p. 718.)  The anti-raiding clause of Section 8 of the Confidentiality Agreement is more akin to the anti-raiding provision found valid in *Loral Corp. v. Moyes, supra*, 174 Cal.App.3d 268 than to the no-hire agreement found invalid in *VL Systems*.  (*VL Systems*, *supra*, at p. 715 ["The facts of this case sharply contrast with the situations in which [anti-raiding] provisions have been upheld, including *Loral*."].)  We conclude the anti-raiding clause of Section 8 of the Confidentiality Agreement is not facially invalid under section 16600.

B.  Sufficiency of the Statement of Decision

Kindt challenges the sufficiency of the statement of decision on the bases that it erroneously incorporated the jury's tainted factual findings and contains no independent findings made by the court.

1.  *Governing Legal Principles*

Under Code of Civil Procedure section 632, a court trying a question of fact must, upon timely request, "issue a statement of decision explaining the factual and legal bases for its decision on the principal controverted issues at trial . . . ."  (*In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 293.)  "A statement of decision need not address all the legal and factual issues raised by the parties."  (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1124-1125.)  Instead, "a statement of decision is adequate if it fairly discloses the determinations as to the ultimate facts and material issues in the case."  (C*entral Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513.)

"A statement of decision facilitates appellate review by revealing the bases for the trial court's decision" (*In re Marriage of Fong*, *supra*, 193 Cal.App.4th at p. 293), and " 'furnishes to the losing party a basis of his motion for a new trial; he is entitled to know the precise facts found by the court before proceeding with his motion for new trial, in order that he may be able to point out with precision the errors of the court in matters either of fact or law.  [Citation.]' " (*Whittington v. McKinney* (1991) 234 Cal.App.3d 123, 127.)

24

### 2. *Kindt's Section 16600 Claim*

Kindt predicated his section 16600 claim on two theories: (1) the Confidentiality Agreement was *facially* invalid under section 16600; and (2) even if not facially invalid, the agreement nonetheless violated section 16600 "*as applied*." (Italics added.) The statement of decision referenced the trial court's prior determination that the Confidentiality Agreement was facially valid, and concluded, "[c]onsistent with that determination and the evidence presented at trial, [Kindt] has failed to prove his Eighth Cause of Action." Based on our conclusion above that the Confidentiality Agreement is facially invalid, and the statement of decision's silence as to Kindt's as-applied theory, we conclude the statement of decision is insufficient with respect to Kindt's section 16600 claim.

### 3. *Kindt's Section 17200 Claims*

The statement of decision addressed each of Kindt's three predicates for his unfair competition claim under section 17200.[12] Regarding the predicates of "illegal pay practices" and interference with Kindt's subsequent employment, the statement of decision noted the issues were the subject of other claims resolved by the jury and "[b]ased on the evidence, the Court finds no basis to determine otherwise." As for the claim predicated on Trango's attempt to enforce an unlawful noncompete agreement, the statement of decision cross-referenced its earlier determination that the "[Confidentiality] Agreement was not a void noncompetition agreement."

---

[12] Under section 17200, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice . . . ."

25

Apart from its legal determination on the section 16600 claim, the trial court essentially acknowledged it based its statement of decision on the jury's findings:

> "The court would consider the jury advisory and I'm not going to do anything differently than the jury did. In other words, the predicate for your equitable claims I think is the same as the factual determination that the jury made. [¶] . . . [¶] The jury made determinations and those determinations I think are the factual determinations in the statement of decision."

Kindt does not take issue, per se, with the statement of decision's incorporation of the jury's findings, acknowledging *Angelier v. State Board of Pharmacy* (1997) 58 Cal.App.4th 592, 598, which upheld a statement of decision that incorporated by reference an administrative board's findings. Instead, he contends that once the court granted a new trial on the basis of jury misconduct, the statement of decision became insufficient because of its reliance on the jury's invalidated findings. The trial court's order granting a new trial did not address the resulting anomaly, and the court did not subsequently amend its statement of decision to make determinations independent from those made by the tainted jury. Under the circumstances, this was error.

Trango argues the trial court could still have independently reached the same conclusions based on the evidence the court received during trial. "In a mixed trial of legal and equitable issues where legal issues are first tried to a jury, the court must follow the jury's factual determinations on common issues of fact." (*Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, 161.)[13] Because the trial court here concluded that "the predicate

---

[13] *Hoopes v. Dolan*, *supra*, 168 Cal.App.4th at pages 160 to 161 distinguished the cases the parties cite for the proposition that trial courts sitting in equity must make

26

for [Kindt's] equitable claims . . . is the same as the factual determination that the jury made," the court was bound by the jury's earlier determinations on those issues. Within that framework, the trial court's conclusion with respect to the jury's findings that it "finds no basis to determine otherwise" is not the same as the trial court independently making the same findings as the jury.

C. Exclusion of Evidence Regarding Trango's Litigation History

Kindt argues the trial court erred by excluding evidence of Trango's litigation history. We review the trial court's evidentiary rulings for an abuse of discretion. (*People v. Thomas* (2011) 51 Cal.4th 449, 485.)

Kindt contends the trial court should have admitted evidence of a prior lawsuit, *Trango v. Solectek*, in which Trango sued a former employee and his new employer for breaching the same agreement at issue here and for misappropriating trade secrets. Kindt asserts that as a result of the trial court's denial of injunctive relief in *Solectek*, Trango knew or should have known the Confidentiality Agreement was invalid. However, the record shows the trial court in *Solectek* denied injunctive relief because of Trango's evidentiary shortcomings and not because of the facial invalidity of the agreement. We see no abuse of discretion in excluding evidence of the *Solectek* action.

independent factual findings. *Saks v. Charity Mission Baptist Church* (2001) 90 Cal.App.4th 1116 is distinguishable because the trial court received additional evidence during the equitable phase of the trial that contradicted the evidence presented to the jury. (*Hoopes*, at p. 160, citing *Saks*, at pp. 1145-1148). *A-C Co. v. Security Pacific Nat. Bank* (1985) 173 Cal.App.3d 462 is distinguishable because the jury was merely advisory and did not decide separate legal claims. (*Hoopes*, at p. 161, citing *A-C*, at p. 474.)

Kindt also contends the trial court erred in excluding testimony from CTI employee Kruer regarding Trango's reputation for litigiousness. Kruer testified in deposition that CTI's decision to terminate Kindt was based on its desire to avoid litigation, considering Kruer's awareness of protracted litigation between Trango and another company run by Kruer's friend. But Kruer also testified he was unaware of the specifics of that other lawsuit or whether Trango had a reputation in the industry for being litigious. Again, we see no abuse of discretion in excluding Kruer's testimony about Trango's purported litigiousness.

DISPOSITION

The order granting Kindt's motion for new trial on his legal claims is affirmed and the order denying Kindt's motion for new trial on his equitable claims is reversed. The matter is remanded to the trial court for a new trial. Kindt is entitled to costs on appeal.

McDONALD, J.

WE CONCUR:

HALLER, Acting P. J.

AARON, J.

28