Filed 7/16/24  Kramer v. Redeemer by the Sea Lutheran Church of Carlsbad CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| BARBARA KRAMER, Plaintiff and Respondent, v. REDEEMER BY THE SEA LUTHERAN CHURCH OF CARLSBAD, Defendant and Appellant. | D081936 (Super. Ct. No. 37-2019-00005282-CU-PO-NC) |

APPEAL from an order of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre; Manning & Kass, Kenneth W. Kawabata, and Steven J. Renick for Defendant and Appellant.

Kelsall, Walwick & Sorahan, Samuel Kelsall V, and Ryan Sorahan for Plaintiff and Respondent.

Redeemer by the Sea Lutheran Church of Carlsbad (Redeemer) appeals the trial court's order granting a new trial to Barbara Kramer after a jury returned a verdict in Redeemer's favor on her claims for negligence and

premises liability. Redeemer contends that the court erred in granting a new trial based on jury misconduct.

We conclude the court did not abuse its discretion in finding that at least one juror's introduction of outside facts into deliberations constituted misconduct, and that the misconduct prejudiced Kramer. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*A. The Lawsuit*

In 2017, Kramer attended a nighttime choir practice at Redeemer, which Donald Howard also attended. When practice ended, Kramer began walking through Redeemer's parking lot and made her way to where Howard's car was parked to speak with him. While Kramer walked around the back of Howard's car to reach the passenger side, Howard started backing out of his parking space and hit Kramer, who suffered injuries.

Kramer and Howard settled out of court. Kramer then sued Redeemer for negligence and premises liability, alleging that Redeemer failed to maintain adequate lighting in the parking lot. At the time of the accident, Howard was in his late 80s and driving a 2006 Buick LaCrosse. He had a valid driver's license, he was wearing his glasses, and all the lights on his car were working. Howard testified that he checked his rearview and side mirrors before backing out slowly and could see what was outside. He was looking for cars rather than people, however, and did not see Kramer.

Kramer presented expert testimony and other evidence to support her theory that a lack of consistent and uniform lighting constituted a dangerous condition in the parking lot at the time of the incident. There was evidence that trees blocked some of the lighting and created shadows in the parking

2

lot.  Howard also gave conflicting statements about whether the lights in the parking lot were on at the time of the incident.

At the close of evidence, the trial court instructed the jury to "not make any statements or provide any information to other jurors based on any special training or unique personal experiences that you may have had related to matters involved in this case.  What you may have learned through your training or experience is not a part of the evidence received in this case." (California Civil Jury Instructions (CACI) No. 5009.)  The court further instructed that for Kramer to establish negligence, she must prove that Redeemer was negligent, she was harmed, and Redeemer's negligence was "a substantial factor" in causing her harm.  (CACI No. 400.)  On the topic of causation, the court instructed that a "substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor.  It does not have to be the only cause of the harm."  (CACI No. 430.)

The jury found, by a vote of 9 to 3, that Redeemer was negligent in the use or maintenance of its parking lot.  However, by a vote of 10 to 2, the jury found that Redeemer's negligence was not a substantial factor in causing harm to Kramer.  Accordingly, the split verdict was ultimately in Redeemer's favor.

*B. Post-Trial Motion for New Trial*

Kramer timely moved for a new trial, alleging juror misconduct as one of several grounds for a new trial.  Her motion attached declarations from jurors regarding statements that were made during deliberations, including a declaration from juror A.S.  We focus here on the claim of misconduct by juror A.S. because we ultimately find it to be dispositive.

3

In portions of juror A.S.'s declaration that were not objected to by Redeemer, he stated the following:

> "During deliberations, I told everyone on the jury that I had driven a 2006 Buick LaCrosse in the past, which is the same car that Don Howard was driving on the night of the collision in this case. I told everyone that the 2006 Buick Lacrosse has sensors on the rear of the car that make a beeping noise when the car is in reverse and someone is in its path. I further told everyone that, even if the parking lot was too dark, Don Howard would have heard the beeping noise that his car made when Ms. Kramer was behind him and should have applied his breaks [*sic*] instead of backing into her. . . . Upon hearing my comments, other members of the jury said that they agreed with me and that this was a reason to put the blame on Don Howard.
>
> "The information I disclosed to the other jurors about the 2006 Buick LaCrosse having rear sensors was based solely on my own personal experience and not on any evidence that I heard at trial. I have since realized that not all 2006 Buick LaCrosse cars have rear sensors . . . ."

Other juror declarations corroborated that A.S. said he had driven a car the same as or similar to Howard's, and that it had sensors that make a beeping noise when someone is detected behind it. In the portion of another juror declaration not objected to by Redeemer, juror L.M. said that juror A.S. "told everyone that he had driven a 2006 Buick Lacrosse in the past and that the car has rear parking sensors." In the portions of two other declarations not objected to by Redeemer, jurors A.C. and K.S. both declared that juror A.S. said in deliberations "that it is difficult to see out of the back windows of the 2005 Buick LaCrosse, and that the car has sensors that make a beeping noise when someone is behind the car that Don Howard would have heard. He said this was the reason for him placing the blame on Don Howard and

4

voting no on the second question [the causation question]. Other jurors also said they based their decision on what he said."

Kramer also asserted there were other forms of jury misconduct based on the use of outside facts during deliberations, including one juror's observations about trees growing over lamp posts in the court's parking lot, discussions among jurors about the settlement between Howard and Kramer, and a purported visibility "experiment" one juror conducted to test how well he could see objects when putting his car in reverse. Kramer further alleged that the jurors refused to follow instructions regarding the preponderance of the evidence standard, that there was insufficient evidence to support the jury's verdict, and that Redeemer's counsel committed misconduct in closing arguments.

In opposition, Redeemer submitted declarations from three other jurors. Two of the declarations were silent about the allegation that juror A.S. had injected extraneous information about rear sensors on the Buick LaCrosse into the deliberations, but they did address Kramer's other allegations of misconduct in detail. A third declaration by juror J.A. asserted that the declarations of jurors K.S. and A.C. submitted by Kramer regarding the alleged misconduct of juror A.S. were untrue. According to juror J.A., juror A.S. said in deliberations "that he had a different year Buick LaCrosse that had back up sensors, but Mr. Howard's car might not have had them. He said some years had sensors and some didn't and he didn't know which Mr. Howard had, which made this a moot point and had nothing to do with my decision. This was also a moot point because nothing was discussed in court about backup sensors. None of the jurors, including me, ever said that they based their decision on what [juror A.S.] said."

In reply, two attorneys for Kramer each submitted a declaration impeaching the declaration of juror J.A.[1]  According to their declarations, they spoke to juror J.A. before filing the motion for new trial.  When they asked her about juror A.S.'s comments regarding sensors on the 2006 Buick LaCrosse, "she replied that she had no recollection about that whatsoever."  They asked her about this repeatedly, and each time she said she had "no recollection of [juror A.S.]'s comments whatsoever."

After a hearing, the trial court issued a written minute order granting Kramer's motion, which stated in relevant part:

> "Following oral argument on the motion for new trial, the Court grants Plaintiff's motion on the singular ground of juror misconduct.  It is denied on all other grounds.  The jurors [*sic*] introduction of outside facts into the deliberations involved facts which were specifically related to the issues of liability and causation."

## DISCUSSION

Redeemer argues on appeal that we should apply a de novo standard of review and reverse the trial court's order because: (1) the trial court improperly considered evidence made inadmissible by Evidence Code section 1150; (2) even if properly admitted, none of the jurors' statements concerning alleged outside facts constituted misconduct; (3) if misconduct occurred, it was not prejudicial; and (4) no other grounds support granting a new trial.

We disagree.  Reviewing for abuse of discretion, we conclude that the court did not err in considering material portions of the juror declarations Kramer submitted with her motion for a new trial regarding objectively verifiable misconduct committed by juror A.S.  We further conclude the court did not abuse its discretion in finding prejudicial juror misconduct based on

---

[1]    Redeemer objected to these attorney declarations in the trial court but does not renew those objections on appeal.

6

A.S.'s statements during deliberations—that the same make, model, and year vehicle that Howard was driving had audible rear sensors which he would have heard when he was backing up and should have caused him to brake even if the lighting was inadequate. Accordingly, we affirm.

*A. Standard of Review*

The parties disagree about which standard of review applies in light of the trial court's minute order. Ordinarily, an order granting a new trial is reviewed only for abuse of discretion, but if the order lacks an adequate specification of reasons, it is subject to independent review. (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 628 (*Oakland Raiders*).) Redeemer argues our review should be de novo because the order lacks sufficient specificity, while Kramer contends that the order is adequate because it cites the "introduction of outside facts into the deliberations," and states that those facts "were specifically related to the issues of liability and causation."

We agree with Kramer. Code of Civil Procedure section 657 requires that an order granting a new trial "specify the ground or grounds" for the order and "the court's reason or reasons for granting the new trial upon each ground stated." The word "ground" refers to any of the seven grounds listed in section 657, including "misconduct of the jury." (Code Civ. Proc., § 657, subd. (2); *Oakland Raiders, supra*, 41 Cal.4th at p. 634.) "A statement of grounds that reasonably approximates the statutory language is sufficient. The statement of reasons, on the other hand, should be specific enough to facilitate appellate review and avoid any need for the appellate court to rely on inference or speculation." (*Oakland Raiders*, at p. 634 [cleaned up].)

Finally, section 657 provides that an order granting a new trial "shall be affirmed if it should have been granted upon any ground stated in the

7

motion, whether or not specified in the order or specification of reasons[,]" with two exceptions: orders cannot be affirmed on the ground of insufficiency of the evidence or on the ground of excessive or inadequate damages unless that ground is specified in the order. (Code Civ. Proc., § 657.) Neither exception applies here.

The parties do not dispute that the trial court specified jury misconduct as the ground for granting Kramer's motion, but they disagree on whether the court gave specific enough reasons to facilitate appellate review. While the court did not list which specific instance or instances of jury misconduct formed the basis of its decision, it did specify the category or subset of alleged misconduct it found warranted a new trial: the introduction of outside facts related to liability and causation. (Cf. *Oakland Raiders, supra*, 41 Cal.4th at p. 632 [review was de novo where court granted new trial on juror misconduct grounds but did not specify any reason for its conclusion].) The order directs us and the parties to focus—without having to speculate—on the allegations that jurors introduced into deliberations outside facts not in evidence relating to liability and causation, which would include A.S.'s statements about the existence of audible rear sensors on 2006 Buick LaCrosse cars. The court's order also sufficiently informs us and the parties that it rejected Kramer's other alleged grounds for a new trial, including the jury's refusal to follow instructions, insufficient evidence to support the verdict, and attorney misconduct. Thus, we conclude that the trial court's stated reasons were specific enough to facilitate appellate review. Redeemer cites no authority holding that a more specific statement is required.

Because the trial court gave sufficient reasons for granting a new trial, the applicable standard of review is abuse of discretion. (*Oakland Raiders, supra*, 41 Cal.4th at p. 636.) Moreover, juror misconduct is an area in which

8

"broad discretion" is accorded to the trial judge. (*Whitlock v. Foster Wheeler, LLC* (2008) 160 Cal.App.4th 149, 159 (*Whitlock*).) "The trial judge is familiar with the evidence, witnesses and proceedings, and is therefore in the best position to determine whether, in view of all the circumstances, justice demands a retrial. Where error or some other ground is established, [the trial court's] discretion in granting a new trial is seldom reversed." (*Id.* at p. 159 [cleaned up].) Put another way, "the determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears. This is particularly true when the discretion is exercised in favor of awarding a new trial, for this action does not finally dispose of the matter. So long as a reasonable or even fairly debatable justification under the law is shown for the order granting the new trial, the order will not be set aside." (*Ibid.* [cleaned up].)

As part of our review under this "manifest abuse of discretion" approach, we examine the trial court's determination of: (1) whether the affidavits supporting the motion are admissible; (2) if admissible, whether the facts in the affidavits establish misconduct; and (3) if there was misconduct, whether the misconduct was prejudicial. (*Whitlock, supra*, 160 Cal.App.4th at p. 160.) The affidavits on behalf of the prevailing party "are deemed not only to establish the facts directly stated therein, but all facts reasonably inferred from those stated[,]" and we defer to the trial court's credibility determinations if supported by substantial evidence. (*Id.* at pp. 159–160 [cleaned up]; *People v. Flores* (2021) 70 Cal.App.5th 100, 110 (*Flores*).) Our review for abuse of discretion also extends to the trial court's prejudice ruling. (*Whitlock*, at p. 160.)

9

*B. Admissibility of Juror Declarations*

Evidence Code section 1150 governs the admissibility of evidence to impeach a verdict. Section 1150 provides, in relevant part, that "any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly." (Evid. Code, § 1150, subd. (a).) However, "[n]o evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." (*Ibid.*)

Redeemer contends that the trial court erred to the extent it relied on juror declarations regarding the introduction of outside facts because those declarations were inadmissible under Evidence Code section 1150. As we have noted, however, Redeemer did not object to the portions of the juror declarations we have quoted above regarding the alleged misconduct of juror A.S. and its effect on him and the other jurors.

There is conflicting authority on whether an objection under Evidence Code section 1150 is waived if not asserted in the trial court. Several cases have applied the usual rule that an evidentiary objection is waived if raised for the first time on appeal. (See, e.g., *People v. Reyes* (1974) 12 Cal.3d 486, 506, fn. 2 (*Reyes*) [defense counsel waived any objection under section 1150 by consenting to allow the jurors to be examined to determine if the presence of excluded evidence in jury room affected their verdict]; *People v. Jordan* (2003) 108 Cal.App.4th 349, 366 [defendant waived section 1150 objection to foreperson's statement that jury did not consider his gang affiliation in deliberations by failing to object in trial court].) But another court has concluded that such an objection is preserved even if not asserted in the trial

10

court because "evidence that violates Evidence Code section 1150 is not merely inadmissible; it is irrelevant—'of no jural consequence.' " (*People v. Johnson* (2013) 222 Cal.App.4th 486, 494.)

The most recent Supreme Court authority on this issue is *People v. Collins* (2010) 49 Cal.4th 175 (*Collins*). There, the trial court held an evidentiary hearing on a claim of juror misconduct. During the hearing, jurors testified about overt and ascertainable acts of alleged misconduct during deliberations, but they also testified as to the jurors' subjective reasoning processes "in violation of Evidence Code section 1150." (*Id.* at p. 250.) "[N]o objections were interposed by either the prosecution or [the] defense on the ground that testimony was inadmissible under Evidence Code section 1150." (*Ibid.*) "Nor did the trial court otherwise enforce the limitation of section 1150." (*Ibid.*) Nevertheless, the Supreme Court stated without further explanation: "In conducting our review, we limit our consideration to the overt acts reflected in the testimony." (*Ibid.*)

Although there is arguably some tension between the Supreme Court's decisions in *Collins* and *Reyes* on this issue, we will follow *Collins* because it is the more recent and more on point decision. Accordingly, we will likewise "limit our consideration to the overt acts" described in the juror declarations. (*Collins, supra,* 49 Cal.4th at p. 250.)

The three juror declarations submitted by Kramer do not violate Evidence Code section 1150 to the extent they describe statements juror A.S. made during deliberations about his own personal experience with the Buick LaCrosse and its audible sensors when backing up. Such juror declarations describing "statements made or conduct occurring within the jury room" constitute admissible "evidence of objectively ascertainable overt acts that

11

are open to sight, hearing, and the other senses and are therefore subject to corroboration." (*People v. Steele* (2002) 27 Cal.4th 1230, 1265 (*Steele*).)

Yet portions of these three declarations relating to A.S.'s statements do run afoul of Evidence Code section 1150. For example, after describing what he told the other jurors about the audible rear sensors, juror A.S.'s declaration went on to state: "This is the reason that I placed 100% of the blame for Ms. Kramer's injuries on Don Howard. Other than this information, I sincerely wanted Ms. Kramer to receive compensation for all of the injuries that she suffered. Upon hearing my comments, other members of the jury said that they agreed with me and that this was a reason to put the blame on Don Howard." Likewise, jurors A.C. and K.S. stated in their declarations that juror A.S. "said this was the reason for him placing the blame on Don Howard and voting no on the second question. Other jurors also said they based their decision on what he said." These are all improper statements of the jurors' subjective reasoning processes and the reasons for their votes. (*Guernsey v. City of Salinas* (2018) 30 Cal.App.5th 269, 283.) Accordingly, we will disregard these discrete portions of the declarations in our analysis of this issue.

*C. Proof of Juror Misconduct*

We next consider whether the admissible portions of the juror declarations establish misconduct by juror A.S. The court instructed the jury to "not make any statements or provide any information to other jurors based on any special training *or unique personal experiences* that you may have had related to matters involved in this case." (CACI No. 5009, italics added.) Jurors have an "obligation to follow the instructions of the court . . . ." (*People v. Daniels* (1991) 52 Cal.3d 815, 865.) Moreover, presenting "new evidence from sources outside the trial evidence constitutes misconduct."

12

(*McDonald v. S. Pac. Transp. Co.* (1999) 71 Cal.App.4th 256, 263 (*McDonald*); see also *People v. Wilson* (2008) 44 Cal.4th 758, 829 ["A juror commits misconduct if the juror . . . brings outside evidence into the jury room . . . ."]; *Tapia v. Barker* (1984) 160 Cal.App.3d 761, 766 ["jurors are . . . sworn to follow the court's instructions, and not to consider factors outside the evidence nor to be influenced by prejudice"].)

Redeemer asserts that A.S.'s remarks were not specialized knowledge of outside facts, but rather the mere application of his life experiences. We conclude, however, that it was not a manifest abuse of discretion for the trial court to decide that A.S.'s comments fell on the other side of the line. A.S. spoke specifically about a car of the same year, make, and model as Howard's, and he spoke with the authority of someone who had owned and driven the vehicle himself. As A.S. explained, he told his fellow jurors that because "the 2006 Buick Lacrosse has sensors on the rear of the car that make a beeping noise when the car is in reverse and someone is in its path[,] . . . even if the parking lot was too dark, Don Howard would have heard the beeping noise that his car made when Ms. Kramer was behind him and should have applied his breaks [*sic*] instead of backing into her." Importantly, neither party presented evidence at trial regarding whether Howard's car had rear sensors, so A.S.'s statements injected into the deliberations "outside" facts based on his own unique personal experience. (See *Jones v. Sieve* (1988) 203 Cal.App.3d 359, 366 (*Jones*) [juror committed misconduct by "discuss[ing] and describ[ing] to the jury her own personal experiences with the condition of preeclampsia, one of the basic subjects of the instant medical malpractice action"]; *Smith v. Covell* (1980) 100 Cal.App.3d 947, 952–954 [juror's statements in deliberations about his own personal experiences with back injury constituted misconduct].)

13

*McDonald* is instructive on the issue of misconduct. In that case, a plaintiff employee brought a personal injury action against his railroad employer after a train hit his truck while he was guarding a crossing. (*McDonald, supra*, 71 Cal.App.4th at pp. 259–261.) A juror, who was a transportation consultant, invoked his expertise to persuade other jurors that it would have been infeasible to install crossing gate sensors at the accident scene. (*Id.* at pp. 263–264.) The jury ultimately found that the railroad was not negligent, rejecting one of plaintiff's theories that the railroad should have installed crossing gates or signals. (*Id.* at p. 261.) Reversing the denial of the plaintiff's motion for a new trial, the Court of Appeal concluded that the juror's comments were misconduct because the juror "interjected the subject of 'sensors,' on which there had been no evidence at trial[,]" and "offered a rationale for the absence of gates" which testimony had not provided. (*Id.* at pp. 263–264.) In doing so, the juror's statements "not only derived from sources outside the evidence, but also rebutted a significant element of plaintiff's proof[.]" (*Id.* at p. 264.)

Like the juror in *McDonald*, A.S. interjected matters outside of the scope of the evidence in a manner that addressed a critical disputed issue: whether Redeemer's negligence was a substantial factor in causing harm to Kramer. We recognize there is a "fine line . . . between using one's background in analyzing the evidence, which is appropriate, . . . and injecting 'an opinion explicitly based on specialized information obtained from outside sources,' which [is] misconduct." (*Steele, supra*, 27 Cal.4th at p. 1266.) But under the abuse of discretion standard, the question before us is whether the trial court's decision on this issue was beyond the bounds of reason. Here, A.S. introduced facts based on his unique knowledge as a former owner of the specific type of car Howard drove the night of the incident—which the trial

14

court reasonably found not to be "general knowledge and experience" (*Bandana Trading Co., Inc. v. Quality Infusion Care, Inc.* (2008) 164 Cal.App.4th 1440, 1447) that any citizen might "either assume to be true or already know from the many available sources of information" to be true (*People v. Manibusan* (2013) 58 Cal.4th 40, 58; *ibid.* [no misconduct where facts conveyed to jurors about prison conditions reflected information others might have known from the media]).

In these circumstances, we have no difficulty concluding that the trial court at least had a "reasonable" or "fairly debatable" basis for its finding of juror misconduct. (*Whitlock, supra*, 160 Cal.App.4th at p. 159.) It was reasonable for the trial court to conclude that juror A.S. violated the jury instructions and committed misconduct by injecting his unique personal experiences into the deliberations. "Jurors may not present as facts specialized knowledge they claim to possess." (*People v. Allen and Johnson* (2011) 53 Cal.4th 60, 76; see also *In re Malone* (1996) 12 Cal.4th 935, 963 [juror commits misconduct by asserting a "claim to expertise or specialized knowledge of a matter at issue"].) Accordingly, the trial court did not abuse its broad discretion by finding that there was juror misconduct based on the introduction of outside facts into the deliberations.

### D. Prejudice

Redeemer contends that even if A.S.'s statements constituted misconduct, they did not result in prejudice because there was "conflicting evidence about exactly what [A.S.] said about rear sensors," including whether he was referring to the 2006 model Buick Lacrosse driven by Howard (as he stated in his own declaration) or the 2005 model (as two other jurors stated). Redeemer further argues that because "there can be more than one substantial factor in causing an accident," assigning fault to

15

Howard did not "exonerate" Redeemer or preclude the jury from finding that Redeemer's negligence was a substantial factor in causing the accident. We disagree.

"A showing of misconduct creates a presumption of prejudice[.]" (*McDonald, supra*, 71 Cal.App.4th at p. 265.) "Overt acts, such as the communication of facts obtained outside the evidence presented at trial to the other jurors which occurred here, constitute juror misconduct, and thus, give rise to the presumption of prejudice . . . ." (*Jones, supra*, 203 Cal.App.3d at p. 367.) This presumption may be rebutted by " 'an affirmative evidentiary showing that prejudice does not exist' " (*McDonald*, at p. 265) based on factors such as "the strength of the evidence that misconduct occurred, the nature and seriousness of the misconduct, and the probability that actual prejudice may have ensued." (*Whitlock, supra*, 160 Cal.App.4th at p. 162 [cleaned up].) This analysis of prejudice "is different from, and indeed less tolerant than, normal harmless error analysis, because jury misconduct threatens the structural integrity of the trial." (*McDonald*, at p. 266 [cleaned up].)

We reject Redeemer's suggestion that the presumption of prejudice was rebutted simply because the evidence of juror A.S.'s misconduct was conflicting. As noted, we accord broad discretion to the court's findings regarding prejudice, and to the extent there is conflicting evidence in the affidavits, we give deference to the trial court's analysis. (*Whitlock, supra*, 160 Cal.App.4th at p. 159.) "[W]eighing the credibility of conflicting declarations on a motion for new trial is uniquely within the province of the trial court." (*Weathers v. Kaiser Found. Hosps.* (1971) 5 Cal.3d 98, 109.)

We cannot second-guess the court's implicit decision to credit A.S.'s declaration about what he himself said during deliberations, and to afford

16

less weight to other jurors' declarations about what they heard him say. A.S. was in the best position to remember exactly what he said in deliberations and what year's model of Buick LaCrosse he had driven and was referring to. He also had no apparent motive to upset the jury verdict because he ultimately voted with the majority for Redeemer on the causation question.

Notwithstanding any minor discrepancies, the other jurors' declarations corroborated A.S.'s declaration in material ways. For example, the two jurors who mentioned a 2005 model Buick LaCrosse also recounted A.S. saying that based on his personal experience of driving the car, "Howard would have heard" the sensors beeping, which implies that those jurors assumed Howard and A.S. owned the same car. Juror L.M. confirmed that A.S. stated "he had driven *a* 2006 Buick Lacrosse in the past and that *the car* has rear parking sensors." (Italics added.) These juror declarations generally corroborated A.S.'s own declaration stating that he told the other jurors "the 2006 Buick LaCrosse has sensors on the rear of the car that make a beeping noise when the car is in reverse and someone is in its path" and "even if the parking lot was too dark, Don Howard would have heard the beeping noise." Moreover, two of the three juror declarations submitted by Redeemer did not even attempt to refute juror A.S.'s declaration on this issue, and the third was impeached by the declarations of plaintiffs' counsel. It was the trial court's exclusive function to resolve any discrepancies in the evidence on this issue.

We also reject Redeemer's argument that the court abused its discretion in finding the misconduct prejudicial because A.S.'s statements assigned fault to Howard in a way that only *reduced* Redeemer's relative fault. Contrary to what Redeemer argues, the misconduct need not have *eliminated* Redeemer's fault to be prejudicial on the causation issue. As A.S.

17

stated in his affidavit, he told jurors that "*even if the parking lot was too dark*, Don Howard would have heard the beeping noise that his car made when Ms. Kramer was behind him[.]"  (Italics added.)  As noted, the jury instructions define "substantial factor" as "a factor that a reasonable person would consider to have contributed to the harm" which "must be more than a remote or trivial factor" and need not be "the only cause of the harm." (CACI No. 430.)  A.S. effectively conveyed to fellow jurors that Redeemer's negligence was not a substantial factor in causing Kramer's injuries because Howard's failure to brake in response to beeping noises was the predominant cause, and Redeemer's negligence was at most a "remote or trivial" factor that a reasonable person would not have viewed as contributing to the harm. Put another way, by diminishing the importance of the inadequate lighting in the parking lot, A.S.'s comments could have led a reasonable juror to decide that Redeemer's negligence did not contribute *enough* to Kramer's harm to be considered a "substantial" factor.

Furthermore, unlike in cases where the presumption of prejudice was deemed rebutted, here there was no other evidence at trial to corroborate the extraneous information A.S. improperly injected into the jury deliberations; in fact, the parties do not dispute that Howard's car did not actually have rear sensors, which means A.S.'s statements likely misled the jury.  (Cf. *Steele, supra*, 27 Cal.4th at pp. 1265–1266 [no misconduct where "[t]he views the jurors allegedly asserted . . . were not contrary to, but came within the range of, permissible interpretations of [the] evidence."]; *People v. Lewis* (2001) 26 Cal.4th 334, 390–391 [no misconduct where juror shared personal religious views regarding the death penalty because juror did not "consult his own outside experience," nor share "erroneous legal advice with other jurors[]"].)  As reflected by the jury's split verdict, the misconduct here also

18

went to a key issue in the case: causation.  (See *Flores, supra*, 70 Cal.App.5th at p. 113 [listing centrality of the issue impacted by misconduct as relevant factor in evaluating prejudice].)  Given the jury's 9-3 finding of negligence against Redeemer for inadequate lighting, the split verdict on causation, and the potential significance of juror A.S.'s misconduct on the causation question, we cannot conclude on this record that the trial court abused its discretion in finding that Redeemer failed to rebut the presumption of prejudice.

Because the trial court did not abuse its discretion in finding prejudicial misconduct based on juror A.S.'s statements, we affirm its order granting Kramer a new trial.  We need not and do not address the other grounds asserted by Kramer for granting a new trial.

DISPOSITION

The order granting a new trial is affirmed.  Kramer is entitled to her costs on appeal.

BUCHANAN, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.

19